[No. S092183. July 11, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO FARELL, Defendant and Appellant.

## COUNSEL

Nolan & Armstrong, Nolan, Armstrong & Barton, Thomas J. Nolan, Mark K. Goldman, Mara I. Kapelovitz and Daniel J. Barton for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen,

Raymond A. Cardozo, Moona Nandi, Gerald A. Engler and George F. Hindall III, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—In this case we determine whether Penal Code section 1203.044, which requires the imposition of a minimum county jail sentence as a condition of probation upon conviction of certain theft offenses, applies to the theft of property other than money, including trade secrets.[1] We conclude that it does.

I

On April 18, 1997, an amended complaint was filed charging defendant with the theft of a trade secret, in violation of section 499c, subdivision (b)(1). It was further alleged as a sentence enhancement that the loss exceeded $2.5 million within the meaning of section 12022.6, subdivision (a)(4), and as a restriction on the granting of probation that the theft was of an amount exceeding $100,000 within the meaning of sections 1203.044 and 1203.045. Defendant pleaded no contest to the theft charge, a charge based upon evidence that he had printed out confidential design specifications for certain computer chips on the last day of his employment as an electrical engineer at Digital Equipment Corporation and also had done so on the following day. This evidence was obtained during execution of a search warrant at his home a few days later. The confidential specifications potentially could be useful in designing other technology. Defendant waived preliminary hearing and jury trial on the section 12022.6 enhancement allegation. He objected, however, to the potential application of section 1203.044 to his sentence. (He did not object to the application of section 1203.045.)

A hearing was held in the superior court on the limited question of whether section 1203.044 applies to the theft of property other than money, including trade secrets. The court concluded that the provision applies to the theft of all property of a certain value, including trade secrets. Defendant subsequently admitted the truth of an amended enhancement allegation (§ 12022.6, subd. (a)(3) [loss exceeding $1 million]), and further admitted that the theft was of an amount exceeding $100,000. (§§ 1203.044, 1203.045.) In accordance with the requirements of section 1203.044, the

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

court suspended imposition of sentence and placed defendant on probation for a period of three years on condition that he serve three months in county jail, with credit for time served of seven days. The court granted a stay of the jail term pending appeal.[2]

The Court of Appeal reversed, concluding that section 1203.044 applies only to the theft of what it termed "monetary property." We granted the Attorney General's petition for review.

## II

Defendant stands convicted of theft, specifically a violation of section 499c, subdivision (b)(1), which provides: "[¶] (b) Every person is guilty of theft who, with intent to deprive or withhold the control of a trade secret from its owner, or with an intent to appropriate a trade secret to his or her own use or to the use of another, does any of the following: [¶] (1) Steals, takes, carries away, or uses without authorization, a trade secret." The statute defines the term "trade secret" as follows: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (A) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (§ 499c, subd. (a)(9).)

The trial court determined that section 1203.044 applies to such a theft. This statute, entitled The Economic Crime Law of 1992, requires that a defendant who is convicted of certain theft offenses and is granted probation shall be sentenced to at least 90 days in the county jail as a condition of probation. (§ 1203.044, subd. (e).) It also subjects persons who are convicted of qualifying offenses and are granted probation to exacting requirements with respect to reporting assets and income (see § 1203.044, subds. (h)-(o)), and imposes stringent restitution requirements upon convicted defendants. (§ 1203.044, subds. (g), (p)-(s).) In addition, a defendant must pay a surcharge to the county equalling 20 percent of the restitution ordered.

---

[2]Our statement of facts relies upon the court's oral pronouncement of judgment in specifying as three months in county jail the term of incarceration that was imposed as a condition of probation. The record of the oral pronouncement of the court controls over the clerk's minute order, which referred to five months in county jail. (See *People v. Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; see also *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040].) The court additionally imposed a restitution fine of $200, a booking fee of $140.50, a supervision fee not to exceed $20 per month, a presentence preparation fee not to exceed $300, and restitution according to proof. No additional conditions were imposed as the result of the section 1203.045 allegation; that provision merely restricts to "unusual cases" the granting of probation when the defendant is convicted of "theft of an amount exceeding one hundred thousand dollars."

(§ 1203.044, subd. (g).) The statute also renders ineligible for probation those defendants alleged and found to have been previously convicted of a specified felony. (§ 1203.044, subd. (b).)

As relevant to the present case, the statute provides: "This section shall apply only to a defendant convicted of a felony for theft of an amount exceeding fifty thousand dollars ($50,000) in a single transaction or occurrence. This section shall not apply unless the fact that the crime involved the theft of an amount exceeding fifty thousand dollars ($50,000) in a single transaction or occurrence is charged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact. Aggregate losses from more than one criminal act shall not be considered in determining if this section applies." (§ 1203.044, subd. (a).)[3]

---

[3]Other provisions of section 1203.044 include: "[¶] (b) . . . [P]robation shall not be granted to a defendant convicted of a crime to which subdivision (a) applies if the defendant was previously convicted of an offense for which an enhancement pursuant to Section 12022.6 was found true even if that enhancement was not imposed by the sentencing court. . . . [¶] (c) In deciding whether to grant probation to a defendant convicted of a crime to which subdivision (a) applies, the court shall consider all relevant information, including the extent to which the defendant has attempted to pay restitution . . . . [¶] (d) In addition to the restrictions on probation imposed by subdivisions (b) and (c), probation shall not be granted to any person convicted of theft in an amount exceeding one hundred thousand dollars ($100,000) in a single transaction or occurrence, except in unusual cases . . . . [¶] (e) Subject to subdivision (f), if a defendant is convicted of a crime to which subdivision (a) applies and the court grants probation, a court shall impose at least a 90-day sentence in a county jail as a condition of probation. If the defendant was convicted of a crime to which subdivision (d) applies, and the court grants probation, the court shall impose at least a 180-day sentence in a county jail as a condition of probation. [¶] (f) The court shall designate a portion of any sentence . . . as a mandatory in-custody term. . . . [¶] (1) If the defendant was convicted of a crime to which subdivision (a) applies, the mandatory in-custody term shall be no less than 30 days. If the person serves a mandatory in-custody term of at least 30 days, the court may, in the interests of justice . . . reduce the mandatory minimum 90-day sentence required by subdivision (e). [¶] (2) If the defendant was convicted of a crime to which subdivision (d) applies, the mandatory in-custody term shall be no less than 60 days. If the person serves a mandatory in-custody term of at least 60 days, the court may, in the interests of justice . . . reduce the mandatory minimum 180-day sentence required by subdivision (e). [¶] (g) If a defendant is convicted of a crime to which subdivision (a) applies, and the court grants probation, the court shall require the defendant as a condition of probation to pay restitution to the victim and to pay a surcharge to the county . . . . [¶] . . . [¶] (h) Notwithstanding any other law, if a defendant is convicted of a crime to which subdivision (a) applies and the court grants probation, as a condition of probation . . . the defendant shall provide the county financial officer with . . . : [¶] (1) True and correct copies of all income tax and personal property tax returns . . . . [¶] (2) A statement of income, assets, and liabilities . . . ." The statute continues: "(j) A statement of income, assets, and liabilities form . . . shall require the defendant to furnish relevant financial information identifying the defendant's income, assets, possessions, or liabilities, actual or contingent." In addition, the statute provides that: "(o) During the term of probation, the defendant shall notify the county financial officer . . . after receipt from any source of any money or real or personal property that has a value of over five

The Court of Appeal determined that section 1203.044 may not be applied to persons convicted of the theft of trade secrets. It examined the words of the statute and the legislative history of the enactment and, concluding that the statute is at best ambiguous, applied the so-called rule of lenity to give defendant the benefit of the doubt.

Closely examining the text of the statute, the appellate court turned first to the dictionary. The court asserted that in ordinary usage, "[t]he word 'amount' is defined as 'the total number or quantity' and/or 'a principal sum and interest on it.' [Citation.] The only 'number,' 'quantity,' or 'sum' designated in subdivision (a) is described in 'dollars.' There is no specific reference to other property to which the subdivision might apply. One could argue that there is no language in the subdivision that could reasonably be construed as including other kinds of property. Phrasing such as, 'property taken is of a value exceeding' or 'property worth more than' would have had such an effect, but is not present." The Court of Appeal declared that its function was to interpret statutory language, but not to insert omitted language regarding the value or worth of the property taken. The court also inferred an intent that section 1203.044 apply only to "monetary theft" from the circumstance that, in those portions of the statute imposing upon a convicted defendant the duty to disclose assets for the purpose of ensuring appropriate restitution, the Legislature referred not simply to dollar amounts but to disclosure of property exceeding certain "worth" or "value." The Court of Appeal also pointed to other references in the Penal Code to property according to its value, and declared that these examples establish "that the Legislature knew how to make the distinction between monetary property and other property where its worth would be at issue and did so in section 1203.044."

■ Our task is one of statutory interpretation and, "as with any statute, [it] is to ascertain and effectuate legislative intent. [Citations.] We turn first to the words of the statute themselves, recognizing that 'they generally provide the most reliable indicator of legislative intent.' " (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) ■ We examine the meaning of the phrase "convicted of a felony for theft of an amount exceeding fifty thousand dollars," keeping in mind that the words must be interpreted in context. (See *People v. Lawrence* (2000) 24 Cal.4th 219, 230 [99 Cal.Rptr.2d 570, 6 P.3d 228].)

In outlining the circumstances under which a person given a probationary term for a theft offense must be sentenced to a minimum period in custody

thousand dollars . . . . [¶] . . . [¶] (r) The willful failure to pay the amounts required by the payment schedule . . . is a violation of probation."

and subjected to demanding restitution requirements, section 1203.044 does not specify that the theft must involve cash—or that it must involve what is referred to by the Court of Appeal as "monetary property" and by defendant as a "cash equivalent."

The crime of theft, of course, is not limited to an unlawful taking of money. Rather, "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft." (§ 484, subd. (a).)

The crime of theft may involve the theft of trade secrets; indeed, in enacting section 499c, the Legislature specified that the theft of trade secrets is akin to the theft of any other property. (See Stats. 1967, ch. 132, § 1, p. 1163 ["It is the purpose of this act to clarify and restate existing law with respect to crimes involving trade secrets and to make clear that articles representing trade secrets, including the trade secrets represented thereby, constitute goods, chattels, materials and property and can be the subject of criminal acts"].)

In the absence of evidence to the contrary, we may infer that when the Legislature referred in section 1203.044 to persons "convicted of a felony for theft," it had in mind the general definition of theft, including the broad categories of property that may be the subject of theft pursuant to section 484.

The Court of Appeal and defendant, however, focus upon the words "an amount exceeding fifty thousand dollars," asserting that this language refers specifically to the theft of money or property that is the equivalent of money. Even examining the quoted words in isolation, however, we are not persuaded that they bear so restricted a meaning or that they exclude reference to the value of the property stolen. Returning to dictionary definitions, we observe that the term "amount" is defined variously as "1 a: the total number or quantity . . . b: the quantity at hand or under consideration . . . 2: *the whole effect, significance, or import* [or] 3: a principal sum and the interest on it." (Merriam-Webster's Collegiate Dict. (10th ed. 1994) p. 39, italics added.) Another source refers specifically to value as a possible meaning of

the word "amount," defining the term, in relevant part, as follows: "(1) The sum total to which anything mounts up or reaches . . . . [¶] . . . [¶] (2) . . . The full *value*, effect, significance, or import." (1 Oxford English Dict. (2d ed. 1989) p. 411, italics added.)

Because the word "amount" may be understood to refer to the value of an item, and because the crime of theft includes any personal property, we do not find that the words relied upon by the Court of Appeal and by defendant provide adequate support for their position. Indeed, had the Legislature intended that section 1203.044 be applied only to thefts of cash or cash equivalents, the word "amount" in the statutory phrase "amount exceeding fifty thousand dollars" would have been superfluous. Furthermore, despite their emphasis upon this phrase, even the Court of Appeal and defendant do not assert that the statute is limited to the theft of a certain amount of currency, but would extend the reach of the statute to "monetary property" or "cash equivalents"—terms that are not found in the statute and that we find difficult to apply.

In this connection, the Court of Appeal offered the suggestion that the statute may apply to the "theft of anything where a definite, quantified amount can be ascertained from the face of the document, such as checks, promissory notes, bonds, etc." This interpretation, of course, is not found in the language of the statute and is subject to its own problems of scope and valuation. Reference to the "face of the document" suggests that coins would not be included, even though coins constitute "monetary property." Difficult questions could be presented, for example, by the theft of rare coins whose face value may be negligible but whose market value may be more than $50,000—this would be a theft of money, but of what nature or amount? Similar anomalies could be presented by the theft of a worthless bond issued by a long-defunct company or the theft of a promissory note in which the obligation has been satisfied.

We observe that in another related statute the Legislature has used the term "amount" to signify value. Section 12022.6 supplies a sentence enhancement when a defendant "takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction," when the loss exceeds a dollar amount specified by the statute. (§ 12022.6, subd. (a).)[4] The additional term of imprisonment varies, depending upon whether the "loss exceeds fifty thousand dollars" or specified greater amounts. Despite the circumstance that a felony (and "loss") involving *damage* or *destruction* of property by

[4]The statute defines the term "loss" to include "the retail price or fair market value" of computer software and its components, such as diskettes. (§ 12022.6, subd. (e)(1) & (2).)

definition clearly would not be limited to cash or cash equivalents, the statute further provides: "The additional terms provided in this section shall not be imposed unless the facts of the taking, damage, or destruction in excess of the *amounts* provided in this section are charged in the accusatory pleading and admitted or found to be true by the trier of fact." (§ 12022.6, subd. (c), italics added.)

Another example in which "amount" refers to value is found in section 594. The punishment for the crime of vandalism depends upon whether "the amount of defacement, damage, or destruction is four hundred dollars ($400) or more," or the "amount" is $10,000 or more. (§ 594, subd. (b)(1).) Vandalism is punishable only as a misdemeanor "[i]f the amount of defacement, damage, or destruction is less than four hundred ($400) dollars." (§ 594, subd. (b)(2)(A).) Obviously, in using the term "amount," the Legislature was not concerned with defacement of currency or financial instruments, but with defacement of property of a certain *value*. (See also Code Civ. Proc., § 85 [jurisdictional amounts in civil cases].)[5]

To interpret section 1203.044 as limited to the theft of cash or cash equivalents also would be inconsistent with express legislative intent. The Legislature addressed problems of certain white collar crimes, specifically theft, in enacting section 1203.044. As the Legislature's own statement of intent discloses, that body intended to remedy the perceived relative unfairness arising from the light probationary sentences meted out to white collar criminals, as well as to provide reliable tools to ensure that victims of white collar criminals receive restitution, and to provide financial support for investigation and prosecution of white collar crime.

The Legislature declared in enacting section 1203.044: "[M]ajor economic or 'white collar' crime is an increasing threat to California's economy and the well-being of its citizens. The Legislature intends to deter that crime by ensuring that every offender, without exception, serves at least some time in

---

[5]The Attorney General also points to section 1203.045 (enacted in 1983), limiting to "unusual cases" the granting of probation when a "person [is] convicted of a crime of theft of an amount exceeding one hundred thousand dollars." The Attorney General notes that prior to the enactment of section 1203.044, section 1203.045—worded similarly to section 1203.044—had been applied to the theft of property other than money. (See *People v. Workman* (1989) 209 Cal.App.3d 687 [257 Cal.Rptr. 753]; *People v. Moore* (1988) 201 Cal.App.3d 877 [247 Cal.Rptr. 353].) We hesitate, however, to assume that the Legislature had these cases in mind when it drafted section 1203.044 (see *People v. Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288]), because the opinions in these cases did not have occasion to discuss the issue now before us or to *construe* the statutory language in question. We cannot infer legislative awareness and intent from the mere circumstance that the statement of facts in each opinion recited that the defendants had been sentenced pursuant to section 1203.045 for thefts that did not involve money.

jail and by requiring the offenders to divert a portion of their future resources to the payment of restitution to their victims. [¶] White collar criminals granted probation too often complete their probation without having compensated their victims or society. [¶] Probation accompanied by a restitution order is often ineffective because county financial officers are often unaware of the income and assets enjoyed by white collar offenders. . . . Thus, it is the Legislature's intent that the financial reporting requirements of this act be utilized to achieve satisfactory disclosure to permit an appropriate restitution order. [¶] White collar criminal investigations and prosecutions are unusually expensive. These high costs sometimes discourage vigorous enforcement of white collar crime laws by local agencies. Thus, it is necessary to require white collar offenders to assist in funding this enforcement activity. [¶] It is the intent of the Legislature to have this legislation accomplish the punishment, deterrent, and rehabilitative goals contemplated by the United States Supreme Court as stated in Kelly v. Robinson, 479 U.S. 36 [107 S.Ct. 353, 93 L.Ed.2d 216] [restitution ordered as a condition of probation is not dischargeable in bankruptcy]." (Stats. 1992, ch. 1334, §§ 1, 3-4, p. 6548, reprinted in Historical and Statutory Notes, 51 West's Ann. Pen. Code (2002 supp.) foll. § 1203.044, pp. 99-100.)

We observe that the term "white collar crime" is a relatively broad one and is not limited to losses involving cash or cash equivalents. It generally is defined as "[a] nonviolent crime usu[ally] involving cheating or dishonesty in commercial matters. Examples include fraud, embezzlement, bribery, and insider trading." (Black's Law Dict. (7th ed. 1999) p. 1590.) The Legislature has applied the term "white collar crime" to fraud and embezzlement in section 186.11, a statute that provides for enhanced prison terms for recidivists committing these offenses when the offense involves a pattern of "taking of more than one hundred thousand dollars." Like the crime of theft, fraud and embezzlement are not limited to the unlawful acquisition of cash or cash equivalents. (See, e.g., §§ 503-514 [embezzlement], 528-538 [fraud offenses].) Indeed, frequently fraud and embezzlement simply are methods by which a charged theft is accomplished. (See § 484, subd. (a); and pattern jury instructions CALJIC No. 14.05 [theft by trick and device]; CALJIC No. 14.07 [theft by embezzlement]; and CALJIC No. 14.10 [theft by false pretenses].)

Because the crime of theft includes a wide range of property and the term "white collar crime" has a broad meaning, we find it improbable that the Legislature intended to address only the theft of cash or cash equivalents in adopting The Economic Crime Act of 1992. It is far more reasonable to conclude that the Legislature intended the provision to apply to all thefts of property of a particular value. Any other interpretation would permit many

white collar thieves to continue to receive light probationary sentences and to evade strict restitution requirements. From the usual meaning of the terms used in section 1203.044, the purpose of the enactment, and the Legislature's parallel use of the same terms in other statutes, one must conclude that section 1203.044 is not limited to thefts of cash or cash equivalents.

As noted, the Court of Appeal, pointing to other subdivisions within section 1203.044 that employ the term "value," inferred that when the Legislature means to specify value, it says so expressly. (See, e.g., § 1203.044, subd. (j)(3) [requiring disclosure of assets of "a value over three thousand dollars"].) These provisions, however, deal with income-reporting requirements imposed on defendants who have been granted probation, and not with definition of the offenses to which the statute applies. These other provisions are of little use, therefore, in understanding the intended reach of the statute now before us. It certainly is true that the Legislature frequently does define offenses—even theft offenses—by specific reference to the *value* of the item stolen. (See, e.g., § 487, subd. (a) [grand theft is committed when the "property taken is of a value exceeding four hundred dollars"].) It does not follow, however, that in omitting the term "value" in the present statute and in the other instances noted above, the Legislature intended to limit the applicability of section 1203.044 to thefts involving cash or cash equivalents. In any event, the reasoning adopted by the Court of Appeal cuts both ways. We note that when the Legislature intends to limit the reach of the law to cash or cash equivalents, it has done so expressly. (See, e.g., Health & Saf. Code, § 11370.6, subd. (a) [enhancement for possession of "moneys or negotiable instruments" exceeding $100,000 attributable to the sale of controlled substances].)

Defendant also asserts that difficult questions of valuation would face a court that applied section 1203.044 to the theft of trade secrets or other nonmonetary property, and that for this reason it is unlikely that the Legislature intended to include nonmonetary property—specifically intellectual property—within the reach of this statute. We do not believe that the Legislature would consider problems of valuation determinative. Similar questions of valuation are presented by any charge of grand theft pursuant to section 487 or by so-called excessive-takings allegations under section 12022.6, yet these provisions clearly apply to property other than money. (See, e.g., CALJIC No. 14.26 ["[w]hen the value of property alleged to have been taken by theft must be determined, the reasonable and fair market value at the time and in the locality of the theft shall be the test"].) Questions of valuation for the purpose of any restitution to be ordered in a case of theft of intellectual property are comparable to questions that face the court when the defendant has stolen any property other than cash, yet this has not prevented

the Legislature from requiring restitution to all victims who have suffered economic losses due to crime. (See § 1202.4, subd. (f) ["In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . ."].) Indeed, our state Constitution recognizes a crime victim's general entitlement to "restitution from . . . wrongdoers for financial losses suffered as a result of criminal acts . . . ." (Cal. Const., art. I, § 28, subd. (a); see also id., art. I, § 28, subd. (b).) We do not believe that the Legislature intended to exempt the theft of nonmonetary or intellectual property from the restitution requirements imposed by section 1203.044 simply because thefts of this type may present problems of valuation. Such a conclusion would be quite inconsistent with the Legislature's intent to punish white collar crime more vigorously than in the past and to provide improved methods for ensuring that victims of white collar crime receive restitution.

The Court of Appeal acknowledged some room for doubt with respect to its interpretation of section 1203.044, conceding that "[t]he phrase 'a felony for theft' might connote any felony that involves any theft. A theft is by dictionary definition the unlawful taking of property [citation]; i.e., anything of value, be it money or other personal property. Thus, the phrase 'felony for theft' could be construed to reference any of the myriad statutes that proscribe all manner of theft in all their various permutations from embezzlement to car theft to trade secret theft. Consonant with such a construction, the phrase 'of any amount exceeding fifty thousand dollars' would serve to narrow the breadth of the prior phrase by limiting it to large thefts." (Fn. omitted.)

In light of this acknowledgement, the Court of Appeal turned to legislative history as a potential aid in the court's task of statutory interpretation. It pointed to evidence suggesting, in its view, that in enacting section 1203.044, the Legislature did not intend to address all forms of white collar crime but had a more limited intent—to address the types of crimes involved in the savings and loan scandals of the 1980's. In support, the Court of Appeal offered a press release issued by the office of the author of the bill that added section 1203.044 to the Penal Code, as well as a statement in the introductory portion of the Senate version of the bill and legislative committee reports, and also relied upon the evolution of the language of the bill as it passed through the Legislature. The press release, for example, was entitled "Presley Bill Would Tighten Screws on Convicted S&L Officials: New Focus on Restitution for Victims from White Collar Criminals." (Sen. Presley, Press Release re: Sen. Bill No. 541 (1991-1992 Reg. Sess.) Mar. 15, 1991.) The press release declared: "[W]e must make it very expensive under the criminal law to steal people's life savings, as in the case of the savings

and loan scandals or other future similar situations." (*Ibid.*) Specifically, the author of the bill declared that "this institutional theft is as serious a crime as burglary and other forms of common theft. In many instances more harmful, as the victims of the bunco schemes and fraudulent investment plans will tell you of shattered lives and retirement plans gone forever." (*Ibid.*) The Court of Appeal also referred to the preamble of the bill as introduced, which explained that "[t]he maximum penalty for stealing *large amounts of money* has been too low to deter potential offenders . . . ." (Preamble to Sen. Bill No. 541 (1991-1992 Reg. Sess.) Feb. 27, 1991, italics added.)

The Court of Appeal acknowledged that other sources of legislative history do not indicate an intent to limit the enactment to the theft of money, but indicate that the statute was intended to refer to thefts in which the value of the item stolen exceeds certain sums. For example, despite the discussion of the savings and loan scandals of the 1980's and the specific reference to the theft of money quoted above, the Court of Appeal acknowledged that the language of the bill as introduced specifically encompassed a much broader range of crimes. (See Sen. Bill No. 541 (1991-1992 Reg. Sess.), as introduced Feb. 27, 1991 [providing an enhanced sentence "[i]f any person intentionally takes, obtains, receives, purchases, sells, withholds, conceals, damages, destroys, or causes the loss of money, personal property, or real property in the commission of a specified offense, and the value of that money, personal property, or real property is worth: [specified sums] . . . ."].)

While asserting that most of this legislative history supported its interpretation, the Court of Appeal declared that the evidence was not conclusive and that "the legislative history of Senate Bill No. 541 is not very helpful in showing the intent of the Legislature. . . ." We too find this history susceptible of more than one interpretation and not very helpful.

Defendant, however, places great emphasis on the legislative history of section 1203.044. Specifically, he contends that when the bill was introduced, it clearly would have applied to the theft of any property, not just money. From the circumstance that the Legislature simplified the language of the statute to its present form, defendant infers an intent to narrow the scope of the theft offenses to which the statute would apply to exclude all property except money—or some ill-defined equivalent of money. He also observes that the original language in the bill referred to the "value" of the property stolen, but that this language was omitted before the measure was enacted. Equally plausible, however, is the conclusion that the Legislature realized that it was unnecessary to spell out laboriously the forms of theft to which the provision would apply, because the forms of theft contained in the

original version would be encompassed by the more general terms that appear in the statute as enacted. Further, as the Attorney General notes, defendant's claim potentially is self-defeating, because one of the specific forms of property included in the original version of the bill was money, and the reference to money was omitted in the statute as enacted.

■ We do not find section 1203.044 ambiguous, and "[o]nly when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].) Further, some of the evidence of legislative intent referred to by defendant and by the Court of Appeal is of dubious value. As we frequently have observed, the expressions of individual legislators generally are an improper basis upon which to discern the intent of the entire Legislature. (See *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057]; *People v. Overstreet, supra,* 42 Cal.3d at p. 900.) ■ In any event, we find the actual words of the enactment clear and, like the Court of Appeal, are unable to find conclusive evidence of legislative intent in the sources of legislative history detailed by the Court of Appeal and relied upon by defendant.

Maintaining that the language of section 1203.044 is ambiguous, the Court of Appeal concluded that in order to avoid the imposition of punishment under the authority of a vague statute, and in order to afford defendant the benefit of every reasonable doubt, it would apply the rule that "when a penal statute is susceptible of two constructions, the one more favorable to the defendant should be adopted. [Citation.]" The court then held: "Given these basic legal tenets, we can only conclude that if [the] Legislature intends section 1203.044 to apply to the theft of all property with a value of $50,000, it must state its intentions with greater precision." Defendant, too, relies upon this so-called rule of lenity.

We find it clear from the words employed in section 1203.044 and the declaration of intent accompanying its enactment, that section 1203.044 does not apply solely to thefts of cash or cash equivalents, but rather that it addresses thefts of property—including trade secrets—exceeding specified values. The rule of lenity is invoked only when " 'two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' " (*People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1]; see also *People v. Garcia* (1999) 21 Cal.4th 1, 10-11 [87 Cal.Rptr.2d 114, 980 P.2d 829]; *People v. Cruz* (1996) 13 Cal.4th 764, 783 [55 Cal.Rptr.2d

117, 919 P.2d 731].) We do not find reasonable the strained interpretation offered by defendant and the Court of Appeal.

### III

For the foregoing reasons, the judgment of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.