129 Cal.Rptr.2d 351 (2002)
105 Cal.App.4th 479
The PEOPLE, Plaintiff and Respondent,
v.
Syed Abieda ATHAR, Defendant and Appellant.
No. D037485.
Court of Appeal, Fourth District, Division One.
December 19, 2002.
Review Granted March 26, 2003.
*354 Chris Truax, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Gary W. Schons, Assistant *355 Attorneys General, Robert M. Foster, Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.
O'ROURKE, J.
A jury convicted Syed Abieda Athar of conspiracy to launder money and to manufacture or sell a counterfeit mark (Pen. Code, §§ 186.10, subd. (a)(1), 350, subd. (a)(2))[1] (count 1) and manufacturing or sale of a counterfeit mark (§ 350, subd. (a)(2)) (count 8). The court sentenced Athar to a two-year term on the conspiracy count and imposed a four-year enhancement under section 186.10, subdivision (c)(1)(D) for a money laundering transaction or transactions exceeding $2.5 million. It imposed and stayed a two-year term on count 8. The court suspended Athar's sentence and placed him on probation. Athar contends his conspiracy conviction must be reversed because the court failed to instruct the jury that the overt act or acts in furtherance of the conspiracy must have occurred within the applicable statute of limitations. He also contends the section 186.10 enhancement must be stricken because it was not sufficiently charged in the indictment, the court failed to properly instruct the jury on its elements, and it is not supported by substantial evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]
Beginning in July 1994, Athar agreed with Areyh Barmi, Zahid Hussain (sometimes spelled in Athar's brief as Hussein), Muhammad Haque, Waseem Khan and Muhammad Tariq to sell counterfeit computer software through various fictitious businesses. Athar, Hussain and Haque began by forming a company to sell counterfeit software out of a garage. They established other companies to shield the first from the unlawful sales, and took profits for themselves. The proceeds from the sales were deposited in various bank accounts and then transferred by check, cashier's check or cash through other accounts to conceal the source of the funds or to distribute them to other conspirators. From approximately August 1994, to September 1996, Hussain, using the name Zahid Sharfi, and other conspirators conducted almost three hundred money laundering transactions, many in amounts calculated to avoid reporting requirements under California and Federal law. Bank records showed over $3.7 million in such transactions.
About a month before his arrest on September 6, 1996, Athar rented a storage unit, no. B109, in his own name and moved his and Haque's share of the software into the unit. Police recovered approximately 1,100 to 1,300 units of counterfeit software from that unit. They recovered another 2,300 units of counterfeit software in another unit at the same facility in Khan's name and 200 units of software, components and certificates of authenticity in another unit registered to Tariq.
On July 2, 1999, the district attorney filed an indictment charging Athar and others of committing 55 overt acts in furtherance of the conspiracythe first on July 12, 1994, and the last on September 6, 1996. The indictment alleged: "The object *356 of this conspiracy was to continuously create and operate a network of `front' computer software stores for the sale and distribution of counterfeit software and to recover the profits derived therefrom and to open several bank accounts in the name of the defendants and in fictitious business names of persons and businesses in order to facilitate the concealment of the origin of cash proceeds in excess of $2,500,000.00." As to Athar specifically, the indictment alleged that in 1994 he filed a fictitious business name statement and opened bank accounts for a company called Best Computer Source; in 1995 he opened a bank account for another company called Tri-Star Computer and wrote checks on that account; in May 1996 he wrote a check to cash on another bank account in the name of a company called Compu-Door; and on August 10, 1996 he rented storage units (no. B109 and no. B132) at a location on Miramar Road. Athar was also alleged to have willfully manufactured, intentionally sold and knowingly possessed a counterfeit mark for sale on or about September 6,1996.
The jury returned verdicts finding Athar guilty of manufacture or sale of a counterfeit mark, and also of conspiracy to commit money laundering and manufacture or sale of a counterfeit mark. In connection with the conspiracy count, it specifically found "the value of the transaction or transactions exceeded two million five hundred thousand dollars ($2,500,000). . .."

DISCUSSION

I. Failure to Instruct on Statute of Limitations

Athar contends the court prejudicially erred when it failed to instruct the jury that the overt act necessary to support the conspiracy must have occurred after July 2, 1996, within the three-year limitations period for that offense. (§ 801.[3]) He maintains the statute of limitations is an essential element of the offense charged, thus the court had a duty to instruct the jury that a conspiracy conviction could only be based on an overt act occurring after that date, and by failing to instruct in such a manner, "invited the jury to base its conspiracy conviction on one of the 36 alleged overt acts occurring outside the statute of limitations." Athar asserts the People cannot show the error was harmless beyond a reasonable doubt because the jury was instructed it could base its conviction on any one of the alleged overt acts, and in closing arguments, the prosecutor told the jury pre-July 2,1996 overt acts could serve as the basis for a conspiracy verdict.
The People initially conceded error, but in a supplemental brief contend we should follow People v. Smith (2002) 98 Cal. App.4th 1182, 120 Cal.Rptr.2d 185 (Smith), in which the Sixth District Court of Appeal held a trial court has no sua sponte duty to instruct on the statute of limitations where, as here, the defendant does not raise the statute of limitations as a factual matter at trial. (Id. at p. 1192, 120 Cal.Rptr.2d 185.) They further argue even if the trial court committed error in failing to instruct the jury as Athar urges, the error was in any event harmless under any standard including the beyond a reasonable doubt standard (Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705) because by its verdicts, the jury must have found Athar guilty of overt *357 act number 41, his rental of storage unit no. B109, which occurred within the limitations period. The People reason that the jury unanimously found Athar guilty of possessing for sale 1,000 counterfeit marks on or about September 6, 1996 (count 8), and this finding by necessity had to have been based on the units of counterfeit software found in unit no. B109 rented by Athar on August 10, 1996.

A. Conspiracy and the Statute of Limitations

To resolve Athar's claim of instructional error we first set out some basic principles pertaining to conspiracy and the statute of limitations. As recently explained in People v. Russo (2001) 25 Cal.4th 1124, 108 Cal.Rptr.2d 436, 25 P.3d 641 (Russo), in California a "`conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.'" (Id. at p. 1131, 108 Cal. Rptr.2d 436, 25 P.3d 641, quoting People v. Morante (1999) 20 Cal.4th 403, 416, 84 Cal.Rptr.2d 665, 975 P.2d 1071.) While an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt, the overt act element "consists of an overt act, not a specific overt act." (Russo, supra, 25 Cal.4th at p. 1134, 108 Cal.Rptr.2d 436, 25 P.3d 641.) Further, the overt act need not itself be criminal. (Id. at p. 1135, 108 Cal.Rptr.2d 436, 25 P.3d 641.) Thus, a jury need only agree that any one overt act was committed, even if they disagree as to which particular overt act was committed. (Ibid.) Also, any one of the conspirators, not necessarily the charged defendant, may commit the overt act to consummate the conspiracy. (Ibid.) "Disagreement as to who the coconspirators were or who did an overt act, or exactly what that act was, does not invalidate a conspiracy conviction, as long as a unanimous jury is convinced beyond a reasonable doubt that a conspirator did commit some overt act in furtherance of the conspiracy. When two or more persons combine to commit a crime, the jury need not agree on exactly who did what as long as it is convinced a particular defendant committed the crime regardless of what that defendant's precise role may have been." (Id. at pp. 1135-1136, 108 Cal.Rptr.2d 436, 25 P.3d 641.)
With respect to the statute of limitations in conspiracy cases, courts have long held the statute commences from the date of the commission of the last overt act committed in furtherance of the conspiracy. (People v. Zamora (1976) 18 Cal.3d 538, 548-549, 134 Cal.Rptr. 784, 557 P.2d 75 & fn. 7 (Zamora); People v. Crosby (1962) 58 Cal.2d 713, 728, 25 Cal.Rptr. 847, 375 P.2d 839.) To sustain a conspiracy conviction, the jury need not find that all the overt acts underlying the conspiracy took place within the limitations period, as long as one overt act occurred within that time: "Proof that one of the overt acts in furtherance of the conspiracy occurred after the time before which the statute of limitations would be a bar is sufficient, and evidence of acts occurring before that time may be received to show the conspiracy." (Bompensiero v. Superior Court (1955) 44 Cal.2d 178, 184-185, 281 P.2d 250, citing People v. Gordon (1945) 71 Cal.App.2d 606, 629, 163 P.2d 110 (Gordon); see also People v. Crosby, at p. 728, 25 Cal.Rptr. 847, 375 P.2d 839; People v. Legerretta (1970) 8 Cal.App.3d 928, 934, 87 Cal.Rptr. 587.) However, in dicta, the Russo court observed in conspiracy cases where there is a *358 question regarding the statute of limitations, a trial court may be required to give a form of unanimity instruction obligating the jury to agree an overt act was committed within the limitations period. (Russo, supra, 25 Cal.4th at p. 1136, fn. 2, 108 Cal.Rptr.2d 436, 25 P.3d 641, citing Zamora, supra, 18 Cal.3d at p. 548, 134 Cal. Rptr. 784, 557 P.2d 75.)

B. Athar Has Forfeited the Right to Raise Claims Relating to the Statute of Limitations By Failing to Raise the Defense in the Trial Court

With these principles in mind, we are compelled to agree with the People and conclude Athar has lost the right to raise the asserted instructional error for the first time on appeal under People v. Williams (1999) 21 Cal.4th 335, 87 Cal. Rptr.2d 412, 981 P.2d 42 (Williams) and Smith, supra, 98 Cal.App.4th 1182, 120 Cal.Rptr.2d 185. In Williams, the court decided whether a defendant could inadvertently forfeit the statute of limitations and be convicted of a time barred offense. (Williams, 21 Cal.4th at p. 338, 87 Cal. Rptr.2d 412, 981 P.2d 42.) It held when the charging document indicates on its face the charge is untimely and the defendant does not expressly waive the defense, the defendant may raise the statute of limitations at any time. (Id. at pp. 338, 341, 342, 87 Cal.Rptr.2d 412, 981 P.2d 42.) The court emphasized its decision was limited to those cases in which the prosecution files a charging document that indicates on its face the offense is time-barred: "`[W]here the pleading of the state shows that the period of the statute of limitations has run, and nothing is alleged to take the case out of the statute . . . the power to proceed in the case is gone.' [Citation.] [This rule] does not apply to an information that, as it should, either shows that the offense was committed within the time period or contains tolling allegations. Although, under our cases, defendants may not forfeit the statute of limitations if it has expired as a matter of law, they may certainly lose the ability to litigate factual issues such as questions of tolling." (Id. at p. 344, 87 Cal.Rptr.2d 412, 981 P.2d 42.)
In Smith, the court of appeal addressed the defendant's contention that various convictions had to be reversed in part because the trial court failed to instruct the jury on the applicable statute of limitations. (Smith, supra, 98 Cal.App.4th at pp. 1186-1187, 1192, 120 Cal.Rptr.2d 185.) At issue were the defendant's convictions on multiple counts. (Id. at p. 1185, 120 Cal.Rptr.2d 185.) Before trial, the defendant moved to dismiss certain counts, which were plainly barred on the face of the charging document, on the ground they fell outside the applicable limitations period. (Id. at p. 1187, 120 Cal.Rptr.2d 185.) He did not raise any objection to other counts in the trial court. (Id. at p. 1193, 120 Cal.Rptr.2d 185.) As to these latter counts, the Smith court held the trial court did not err by failing to instruct the jury sua sponte on the statute of limitations: "As a general rule, the trial court need only instruct on the statute of limitations when it is placed at issue by the defense as a factual matter in the trial." (Id. at p. 1192, 120 Cal.Rptr.2d 185.) The Smith court reasoned that to require the trial court to instruct the jury sua sponte on the statute of limitations in cases where the defendant did not raise the issue at trial "would render moot the discussion in Williams as to whether the defendant may raise a statute of limitations claim for the first time on appeal. If the trial court has a sua sponte duty to instruct on the statute of limitations, even if factually not placed at issue by the defendant at trial, there would never have been an issue as to forfeiture of the right to raise the statute of limitations for the first time on appeal; *359 the claim always would be preserved under the rubric of instructional error for failure to give a required instruction sua sponte. As the court clarified in Williams, when an appellate court is reviewing a statute of limitations question after a conviction for the charged offenses, the proper question is whether the record demonstrates that the crime charged actually fell within the applicable statute of limitations." (Smith, supra, 98 Cal.App.4th at pp. 1192-1193, 120 Cal.Rptr.2d 185.)
Here, the indictment did not on its face reveal that the statute of limitations had expired as a matter of law; to the contrary, it alleged 19 overt acts occurring within the three year period before the pleading was filed on July 2, 1999. As stated, only one overt act committed by any conspirator need have occurred within the limitations period; the fact others occurred outside the limitations period does not render the conspiracy count untimely. Thus, the present case requires that we simply apply the necessary corollary of Williams's holding: where the pleading is facially sufficient, i.e., it does not indicate the offense is time barred as a matter of law, the defendant must raise the statute of limitations in the trial court or lose the ability to raise the issue on appeal. (Williams, supra, 21 Cal.4th at p. 345, 87 Cal.Rptr.2d 412, 981 P.2d 42; People v. Padfield (1982) 136 Cal.App.3d 218, 226, 185 Cal.Rptr. 903["[W]hen the pleading is facially sufficient, the issue of the statute of limitations is solely an evidentiary one. The sufficiency of the evidence introduced on this issue does not raise a question of jurisdiction in the fundamental sense"].) In such a case, the limitations defense is an evidentiary defect that should be subject to principles of forfeiture.[4] (E.g., People v. Mower (2002) 28 Cal.4th 457, 474, fn. 6, 122 Cal.Rptr.2d 326, 49 P.3d 1067 [observing issues not relating to jurisdiction in its fundamental sense may be subject to bars including waiver and forfeiture].) Under the circumstances, Athar's failure to raise the limitations defense in the trial court prevents him from raising the issue for the first time before us on appeal.

C. Apart from Forfeiture, Any Instructional Error is Harmless Because There is Abundant Evidence from which the Jury Could Find An Overt Act Occurred Within the Limitations Period

Even if we were to hold the court erred by failing to sua sponte instruct the jury as Athar urges, we would find the error harmless under the state prejudice standard of People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243 (Watson). In reaching this conclusion, we initially reject an important premise underlying Athar's contention: that the statute of limitations is an "essential element of the offense charged."[5] His assertion is undermined by People v. Frazer (1999) 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180 (Frazer), in which the court addressed the retroactive application of a statute extending the statute of limitations in certain instances of child sexual abuse and held such application does not violate ex post facto law. (Frazer, supra, at p. 742, 88 Cal.Rptr.2d 312, 982 P.2d 180.) In so holding, the court stated generally, "[w]hatever its nature for various state law purposes, either before or after Cowan [v. *360 Superior Court (1996) 14 Cal.4th 367, [58 Cal.Rptr.2d 458, 926 P.2d 438]], the statute of limitations is not an `element' of the offense insofar as the `definition' of criminal conduct is concerned." (Frazer, supra, 21 Cal.4th at pp. 760-761, fn. 22, 88 Cal. Rptr.2d 312, 982 P.2d 180; see also People v. Crosby, supra, 58 Cal.2d at p. 723, 25 Cal.Rptr. 847, 375 P.2d 839 [holding an amendment merely adding or extending allegations tolling the statute of limitations would not change the offense charged, reasoning "`although the right to maintain the action is an essential element in the final power to pronounce judgment, that element constitutes no part of the crime itself"]; Smith, supra, 98 Cal.App.4th at p. 1193, 120 Cal.Rptr.2d 185.) We therefore must depart from this court's earlier conclusion in People v. Bell (1996) 45 Cal. App.4th 1030, 1065, 53 Cal.Rptr.2d 156, reached without the benefit of Frazer's holding, that the statute of limitations is an "essential element" of the offense or an equivalent thereof, and its statement that misinstruction on the statute of limitations therefore results in a denial of federal due process.
Because the statute of limitations is not an essential element of the conspiracy offense, the trial court's failure to instruct as Athar proposes, even assuming it was error, did not violate the federal constitution. (Cf. People v. Sengpadychith (2001) 26 Cal.4th 316, 324, 109 Cal.Rptr.2d 851, 27 P.3d 739 [failure to instruct on essential element of crime violates the federal Constitution, invoking the more stringent standard of prejudicial error under Chapman v. California, supra, 386 U.S. 18, 24, 87 S.Ct. 824]; People v. Cox (2000) 23 Cal.4th 665, 676-677, 97 Cal.Rptr.2d 647, 2 P.3d 1189 [same]; People v. Flood (1998) 18 Cal.4th 470, 479-480, 76 Cal. Rptr.2d 180, 957 P.2d 869 [same].) Consequently, the trial court's failure to instruct the jury as to its application in this case is subject to the Watson harmless error standard.
Under Watson, we must reverse when, under the state of the evidence as a whole, there exists a reasonable probability the defendant would have received a more favorable outcome had the error not occurred. (See, e.g., People v. Breverman (1998) 19 Cal.4th 142, 178, 77 Cal.Rptr.2d 870, 960 P.2d 1094.) We conclude there is no such probability because the record contains abundant evidence from which the jury could find (and indeed had to find) beyond a reasonable doubt several overt acts occurring within the limitations period. First, one of the conspirators, Tariq, testified at trial he was the maker of a $9,800 check drawn on a Well's Fargo bank account in 1996; that check, identified on Exhibit 61A as no. 1007, was written within the limitations period (July 17, 1996) and was pleaded by the People as overt act no. 39. Further, an investigating detective testified without objection that on August 27, 1996, another conspirator, Khan, opened storage unit no. E147 which was found to contain approximately 2,300 units of counterfeit software. Khan's act of renting storage unit no. E147 was pleaded by the People as overt act no. 46. As stated, the jury was not required to find that Athar himself committed an overt act within the limitations period in order to find him guilty of conspiracy: "[A]ny one of the conspirators, and not necessarily the charged defendant, may commit the overt act to consummate the conspiracy." (Russo, supra, 25 Cal.4th at p. 1135, 108 Cal. Rptr.2d 436, 25 P.3d 641.)
Additionally, the jury returned a guilty verdict against Athar for violation of section 350, subdivision (a)(2) based on his possession of 1,000 or more counterfeit marks. That section applies to a person "who willfully manufactures, intentionally *361 sells, or knowingly possesses for sale any counterfeit of a mark registered with the Secretary of State or registered on the principal register of the United States Patent and Trademark Office . . .." (§ 350, subd. (a)(2).) The People proceeded on the theory that Athar possessed the counterfeit marks for sale. Subdivision (e)(3) of section 350 provides: "`Knowingly possess' means that the person possessing an article knew or had reason to believe that it was spurious, or that it was used on or in connection with spurious articles, or that it was reproduced without authorization of, or in excess of any authorization granted by, the registrant." At trial, Athar admitted he personally placed the counterfeit software (later determined to be between 1,100 and 1,300 units) into his storage unit no. B109. The evidence was undisputed Athar rented that storage space on August 10, 1996, within the limitations period. Athar does not challenge the sufficiency of the evidence underlying this conviction, and we may easily conclude the jury's verdict on this count could only have been based on Athar's possession of the over 1,000 items of counterfeit units within the storage unit no. B109 rented under his own name. By necessity, to reach the issue of possession the jury had to have found Athar rented the unit in August 1996alleged in the indictment as overt act (no. 41) within the limitations period.
In his reply brief, Athar does not challenge the evidence of his rental or the jury's implied finding on this pointshe merely argues the jury may not rely on the overt act of his rental of the unit because there is ample evidence to suggest the conspiracy if any had terminated by the time he rented it; that by August of 1996, the conspiracy was "unraveling" and there was evidence the conspirators were not working together. He relies on the proposition that once an agreement has terminated and a new one takes its place, the old conspiracy is complete and the statute of limitations begins to run even though a new conspiracy has replaced it. We will not consider such argument raised for the first time in Athar's reply brief. (See People v. Senior (1995) 33 Cal. App.4th 531, 537, 41 Cal.Rptr.2d 1.)
In sum, we may readily infer the jury found beyond a reasonable doubt that the above-identified overt acts occurred. Because each occurred within the applicable limitations period, we conclude on this record the absence of an instruction on the statute of limitations was harmless under Watson.

II. Section 186.10 Enhancement

Athar contends the section 186.10 enhancement must be stricken on several grounds; we reject each in turn.

A. Sufficiency of the Indictment

Athar first contends the indictment did not charge the facts of each individual transaction or transactions of the requisite value under subdivision (c)(2)(A) of section 186.10. In 1996, section 186.10 read in part:
"(a) Any person who conducts or attempts to conduct a transaction or more than one transaction within a 24-hour period involving a monetary instrument or instruments of a total value exceeding five thousand dollars ($5,000) through one or more financial institutions (1) with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any criminal activity, or (2) knowing that the monetary instrument represents the proceeds of, or is derived directly or indirectly from the proceeds of, criminal activity, is guilty of the crime of money laundering.

*362 "(b) Notwithstanding any other law, for purposes of this section, each individual transaction conducted in excess of five thousand dollars ($5,000), or each series of transactions conducted within a 24hour period that total in excess of five thousand dollars ($5,000), shall constitute a separate, punishable offense.
"(c)(1) Any person who is punished under subdivision (a) by imprisonment in the state prison shall also be subject to an additional term of imprisonment in the state prison as follows:
* * *
"(D) If the value of the transaction or transactions exceeds two million five hundred thousand dollars ($2,500,000), the court, in addition to and consecutive to the felony punishment otherwise prescribed by this section, shall impose an additional term of imprisonment of four years.
"(2)(A) An additional term of imprisonment as provided for in this subdivision shall not be imposed unless the facts of a transaction or transactions, or attempted transaction or transactions, of a value described in paragraph (1), are charged in the accusatory pleading, and are either admitted to by the defendant or are found to be true by the trier of fact.
"(B) An additional term of imprisonment as provided for in this subdivision may be imposed with respect to an accusatory pleading charging multiple violations of this section, regardless of whether any single violation charged in that pleading involves a transaction or attempted transaction of a value covered by paragraph (1), if the violations charged in that pleading arise from a common scheme or plan and the aggregate value of the alleged transactions or attempted transactions is of a value covered by paragraph (1).
"(d) All pleadings under this section shall remain subject to the rules of joinder and severance stated in Section 954."
Not only did Athar waive the alleged deficiency by failing to demur to the indictment below (People v. Holt (1997) 15 Cal.4th 619, 672, 63 Cal.Rptr.2d 782, 937 P.2d 213) but his assertion that the indictment "cannot be a basis on which to convict [him] on the enhancement" is without citation to authority. We need not address such a perfunctory and unsupported contention. (See People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481.) But doing so, we point out Athar ignores the fact the People alleged he participated in a conspiracy to commit continuing, multiple acts of money laundering. As such, the operative portion of the money laundering statute is section 186.10, subdivision (c)(2)(B), which as the People point out, requires only that the accusatory pleading charge "multiple violations of this section" arising from a "common scheme or plan." (§ 186.10, subd. (c)(2)(B).) As Athar apparently concedes, multiple violations arising from a common plan or scheme as contemplated by section 186.10, subdivision (c)(2)(B) are not subject to the 24-hour requirement, as the subdivision permits the jury to aggregate the value of multiple transactions (each individually, but not collectively, occurring within a 24-hour period) arising from a common scheme or plan to impose the enhancement. And we do not interpret the statute to require the facts of each individual aggregated transaction be charged; as the People point out, in complex and sophisticated money laundering conspiracies, defendants intentionally limit transactions to amounts under $10,000 in order to avoid federal reporting requirements. Thus, requiring such allegations in conspiracies continuing over a substantial period of time, as this one, would force the *363 prosecution to set forth hundreds of separate charges to allege the section 186.10, subdivision (c)(2)(B) enhancement. (See fn. 6.) We will not interpret the statute in such an unreasonable manner.[6]
Further, no indictment is insufficient by reason of any defect or imperfection of its form so long as no substantial right of the accused is prejudiced upon the merits of the case. (§ 960; Gordon, supra, 71 Cal.App.2d at p. 611, 163 P.2d 110.) "In no event shall a judgment be reversed because of an error in the form of the indictment `unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (Gordon, 71 Cal.App.2d at p. 611, 163 P.2d 110.) Here, the People alleged that the object of defendants' conspiracy was to "continuously create and operate a network of `front' computer software stores for the sale and distribution of counterfeit software and to recover the profits derived therefrom and to open several bank accounts in the name of the defendants and in fictitious business names of persons and businesses in order to facilitate the concealment of the origin of cash proceeds in excess of $2,500,000.00." This allegation gave Athar sufficient notice that the People charged multiple financial transactions collectively amounting to over $2.5 million, as did the proof at trial. But even if the indictment was somehow technically deficient, Athar heard the evidence at trial and from all the facts and circumstances cannot now maintain he was unaware of the charges against him or had no opportunity to meet those charges. (E.g., People v. Paul (1978) 78 Cal.App.3d 32, 43-44, 144 Cal.Rptr. 431 [technical error in failing to allege overt act was not prejudicial where the defendant was fully aware of all the overt acts, had the benefit of discovery and was aware of the evidence against him].)

B. Instructional Error

Athar next contends the court failed to instruct the jury on the elements of the enhancement, including that the enhancement can be found true only if $2.5 million was laundered within a 24-hour period. He maintains: "As the indictment did not charge appellant with multiple violations of section 186.10, it follows that the jury should have been instructed that it could only find appellant guilty of the enhancement if it found that $2,500,000 had been laundered within a 24-hour period."
This reasoning fails because we have already rejected the premise that the indictment failed to charge multiple violations of section 186.10. As for Athar's other contentionthat the jury was not instructed at all on the enhancementthe People concede the jury should have been instructed it could aggregate the transactions if it found they arose from a common plan or scheme, but that the court's failure to so instruct was harmless because the jury found such a common plan or scheme by convicting Athar of conspiracy.
We agree no prejudice resulted from the court's failure to provide an instruction relating to the enhancement. Athar points out the jury was given a verdict form *364 reading: "And we further find that the value of the transaction or transactions exceeded two million five hundred thousand dollars ($2,500,000) within the meaning of Penal Code section 186.10." He argues: "Thus, the jury was invited to simply add up all the transactions regardless of amount and regardless of when they occurred to determine whether they exceeded the $2,500,000 threshold." As we have stated, subdivision (c)(2)(B) of section 186.10 contemplates precisely that when dealing with multiple transactions arising from a common scheme or plan, which the jury necessarily found when it reached its guilty verdict against Athar on the crime of conspiracy. On this basis, we conclude the court's failure to instruct the jury on the enhancement was harmless beyond a reasonable doubt. (People v. Sengpadychith, supra, 26 Cal.4th at pp. 320, 327, 109 Cal.Rptr.2d 851, 27 P.3d 739 [standard of review where trial court fails to instruct on factual element of enhancement].)

C. Sufficiency of the Evidence

Athar finally contends the evidence is insufficient to support the section 186.10 enhancement because it fails to demonstrate that $2.5 million was laundered within the applicable three-year limitations period.[7] He argues if it is permissible to aggregate individual transactions for purposes of the enhancement, only those transactions occurring within the limitations periodi.e., between July 2, 1999, and September 6, 1999, when the conspiracy endedmay be combined, and because those do not reach the $2.5 million threshold, the enhancement must be stricken. He cites no authority for this proposition.
The People concede that only approximately $800,000 of the $2.5 million in transactions took place after July 2, 1996. Nevertheless, the People argue, the evidence is sufficient for the jury to conclude the object of the conspiracy was to launder $2.5 million; because the object of the conspiracy need not be accomplished for the conspiracy's completion, it is irrelevant that some of the transactions took place outside the limitations period.
We agree the limitations period is irrelevant when aggregating transactions for purposes of the section 186.10 enhancement, not for the reason expressed by the People, but because enhancements are not, and should not be treated as, substantive crimes. (People v. Dennis (1998) 17 Cal.4th 468, 500, 71 Cal.Rptr.2d 680, 950 P.2d 1035 (Dennis); People v. Morris (1988) 46 Cal.3d 1, 16, 249 Cal.Rptr. 119, 756 P.2d 843, disapproved on another point in In re Sassounian (1995) 9 Cal.4th 535, 543-545, 37 Cal.Rptr.2d 446, 887 P.2d 527, fns. 5, 6.) In Dennis, the court explained: "`[I]n our statutory scheme sentence enhancements are not "equivalent" to, nor do they "function" as, substantive offenses. Most fundamentally, a sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense. [Citation.]. . ..""' (Dennis, 17 Cal.4th at p. 500, 71 Cal. Rptr.2d 680, 950 P.2d 1035; see also People v. Garcia (2002) 28 Cal.4th 1166, 1174, 124 Cal.Rptr.2d 464, 52 P.3d 648.)
Here, the enhancement is based on the theory that Athar and his coconspirators agreed to a common plan, namely, to conceal the proceeds of their counterfeit sales *365 by engaging in multiple financial transactions with the object of laundering over $2.5 million. As we have discussed above, the crime of conspiracy is complete when the agreement is effected and just one overt act in furtherance thereof has been committed within the limitations period. (Russo, supra, 25 Cal.4th at pp. 1131, 1135, 108 Cal.Rptr.2d 436, 25 P.3d 641; Zamora, supra, 18 Cal.3d at p. 548, 134 Cal.Rptr. 784, 557 P.2d 75.) Thus, the fact some transactions underlying the conspiracy did not take place within the limitations period does not invalidate the conspiracy conviction, as long as there is substantial evidence of one transaction or overt act in furtherance of the conspiracy occurring within that period. We see no reason to depart from this rule when dealing with a sentence enhancement that permits a jury to aggregate violations committed in furtherance of an underlying conspiracy. If we were to interpret the enhancement statute in the manner urged by Athar, we would impose additional punishment only for the aggregate of those transactions occurring within the limitations period; under this interpretation defendants could launder large sums of money over the course of many years as part of an ongoing conspiracy, and would not suffer additional punishment for the high total value of the transactions if the conspiracy was not discovered until well after three years into its course. We decline to read the enhancement statute to such end and, accordingly, reject Athar's sufficiency of the evidence argument.

DISPOSITION
The judgment is affirmed.
WE CONCUR: McDONALD, Acting P.J., and McCONNELL, J.
NOTES
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] In his opening brief, Athar does not challenge the evidence underlying his convictions for conspiracy or for manufacturing or sale of a counterfeit mark. His challenge to the sufficiency of evidence on the section 186.10 enhancement is not as to whether the laundering transactions occurred, but whether they (a) took place within the 24-hour time frame he contends section 186.10 requires and (b) took place within the applicable statute of limitations. We therefore set out an abbreviated version of the facts.
[3] Section 801 provides: "Except as provided in sections 799 and 800, prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense." Sections 799 and 800 are inapplicable here as they involve embezzlement of public money and offenses punishable by death, imprisonment for life, and imprisonment for eight years or more.
[4] We use the term forfeiture, as does the California Supreme Court, to indicate the concept of losing a right by failing to assert it. (Williams, supra, 21 Cal.4th at p. 340, fn. 1, 87 Cal.Rptr.2d 412, 981 P.2d 42.)
[5] Athar does not contend that the trial court's failure to instruct as urged requires that we assess the matter under prejudice theories applicable to unanimity instructions.
[6] "The rule of lenity [whereby courts must resolve doubts as to the meaning of a statute in a criminal defendant's favor] is invoked only when `"two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable."'" (People v. Farell (2002) 28 Cal.4th 381, 394, 121 Cal.Rptr.2d 603, 48 P.3d 1155; see also People v. Avery (2002) 27 Cal.4th 49, 58, 115 Cal.Rptr.2d 403, 38 P.3d 1.) As indicated, we do not find Athar's proposed interpretation reasonable.
[7] We reach only the sufficiency of the evidence argument as it relates to the limitations period, as we have already addressed and rejected Athar's assertion that all of the transactions must occur within a 24-hour period.