5 Cal.Rptr.3d 9 (2003)
112 Cal.App.4th 73
The PEOPLE, Plaintiff and Respondent,
v.
Syed Abieda ATHAR, Defendant and Appellant.
No. D037485.
Court of Appeal, Fourth District, Division One.
September 19, 2003.
Review Granted December 10, 2003.
*13 Chris Truax, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Gary W. Schons, Assistant Attorneys General, Robert M. Foster, Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.
O'ROURKE, J.
A jury convicted Syed Athar of conspiracy to launder money and to manufacture or sell a counterfeit mark (Pen.Code, §§ 186.10, subd. (a)(1), 350, subd. (a)(2))[1] (count 1) and manufacturing or sale of a counterfeit mark (§ 350, subd. (a)(2)) (count 8). The court sentenced Athar to a two-year term on the conspiracy count and imposed a four-year enhancement under section 186.10, subdivision (c)(1)(D) for money laundering transactions exceeding $2.5 million. It imposed and stayed a two-year term on count 8. The court suspended Athar's sentence and placed him on probation. Athar appealed, contending (1) the superior court erred by failing to instruct the jury on the statute of limitations with respect to the conspiracy charge and (2) the section 186.10 enhancement must be stricken because it was not sufficiently charged in the indictment, the court failed to properly instruct the jury on its elements, and it was not supported by substantial evidence.
We rejected these claims and affirmed the judgment including imposition of the section 186.10 enhancement. Our Supreme Court granted review and transferred the matter back to this court with directions to reconsider our opinion in light of the question of whether a money laundering enhancement under section 186.10, subdivision (c) can be applied to a defendant not convicted of money laundering under section 186.10, subdivision (a). (People v. Athar (2002) 105 Cal.App.4th 479, 129 Cal.Rptr.2d 351, review granted Mar. 26, 2003 (S113180), trans. Mar. 26, 2003.) We requested, and the parties submitted, supplemental briefing. Having considered whether imposition of the money laundering enhancement was proper where Athar was convicted not of money laundering, but of conspiracy to commit *14 money laundering, we conclude the court properly enhanced Athar's sentence under section 186.10, subdivision (c) and section 182. Under section 182, a conspirator is to be punished "in the same manner and to the same extent as is provided for the punishment of the target felony. (§ 182, subd. (a).) Applying this provision, the court sentenced Athar pursuant to section 186.10, subdivision (a) to a two-year midterm for the conspiracy, and imposed the additional enhanced punishment as it was required to do under subdivision (c) of that section in view of the jury's finding as to the amount involved in the laundering transactions. We adhere to our prior decision and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]
Beginning in July 1994, Athar agreed with Areyh Barmi, Zahid Hussain (sometimes spelled in Athar's brief as Hussein), Muhammad Haque, Waseem Khan and Muhammad Tariq to sell counterfeit computer software through various fictitious businesses. Athar, Hussain and Hague began by forming a company to sell counterfeit software out of a garage. They established other companies to shield the first from the unlawful sales, and took profits for themselves. The proceeds from the sales were deposited in various bank accounts and then transferred by check, cashier's check or cash through other accounts to conceal the source of the funds or to distribute them to other conspirators. From approximately August 1994, to September 1996, Hussain, using the name Zahid Sharfi, and other conspirators conducted almost three hundred money laundering transactions, many in amounts calculated to avoid reporting requirements under California and Federal law. Bank records showed over $3.7 million in such transactions.
About a month before his arrest on September 6, 1996, Athar rented a storage unit, no. B109, in his own name and moved his and Haque's share of the software into the unit. Police recovered approximately 1,100 to 1,300 units of counterfeit software from that location. They recovered another 2,300 units of counterfeit software in another unit at the same facility in Khan's name and 200 units of software, components and certificates of authenticity in another storage unit registered to Tariq.
On July 2, 1999, the district attorney filed an indictment charging Athar and others of committing 55 overt acts in furtherance of the conspiracythe first on July 12, 1994, and the last on September 6, 1996. The indictment alleged: "The object of this conspiracy was to continuously create and operate a network of `front' computer software stores for the sale and distribution of counterfeit software and to recover the profits derived therefrom and to open several bank accounts in the name of the defendants and in fictitious business names of persons and businesses in order to facilitate the concealment of the origin of cash proceeds in excess of $2,500,000.00." As to Athar specifically, the indictment alleged that in 1994 he filed a fictitious business name statement and opened bank accounts for a company called Best Computer Source; in 1995 he opened a bank account for another company called *15 Tri-Star Computer and wrote checks on that account; in May 1996 he wrote a check to cash on another bank account in the name of a company called Compu-Door; and on August 10, 1996 he rented storage units (no. B109 and no. B132) at a location on Miramar Road. Athar was also alleged to have willfully manufactured, intentionally sold and knowingly possessed a counterfeit mark for sale on or about September 6,1996.
The jury returned verdicts finding Athar guilty of manufacture or sale of a counterfeit mark, and also of conspiracy to commit money laundering and manufacture or sale of a counterfeit mark. In connection with the conspiracy count, it specifically found "the value of the transaction or transactions exceeded two million five hundred thousand dollars ($2,500,000)...." The court sentenced Athar to a six-year total prison term consisting of the middle term of two years on the conspiracy count, and a consecutive four-year enhancement under section 186.10, subdivision (c)(1)(D).[3] It then stayed execution of sentence and granted Athar five-years formal probation on specified terms.

DISCUSSION

I. Failure to Instruct on Statute of Limitations

Athar contends the court prejudicially erred when it failed to instruct the jury that the overt act necessary to support the conspiracy must have occurred after July 2, 1996, within the three-year limitations period for that offense. (§ 801.[4]) He maintains the statute of limitations is an essential element of the offense charged, thus the court had a duty to instruct the jury that a conspiracy conviction could only be based on an overt act occurring after that date, and by failing to instruct in such a manner, "invited the jury to base its conspiracy conviction on one of the 36 alleged overt acts occurring outside the statute of limitations." Athar asserts the People cannot show the error was harmless beyond a reasonable doubt because the jury was instructed it could base its conviction on any one of the alleged overt acts, and in closing arguments, the prosecutor told the jury pre-July 2,1996 overt acts could serve as the basis for a conspiracy verdict.
The People initially conceded error, but in a supplemental brief contend we should follow People v. Smith (2002) 98 Cal. App.4th 1182, 120 Cal.Rptr.2d 185 (Smith), in which the Sixth District Court of Appeal held a trial court has no sua sponte duty to instruct on the statute of limitations where, as here, the defendant does not raise the statute of limitations as a factual matter at trial. (Id. at p. 1192, 120 Cal.Rptr.2d 185.) They further argue even if the trial court committed error in failing to instruct the jury as Athar urges, the error was in any event harmless under any standard including the beyond a reasonable doubt standard (Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705) because by its verdicts, the *16 jury must have found Athar guilty of overt act number 41, his rental of storage unit no. B109, which occurred within the limitations period. The People reason that the jury unanimously found Athar guilty of possessing for sale 1,000 counterfeit marks on or about September 6, 1996 (count 8), and this finding by necessity had to have been based on the units of counterfeit software found in unit no. B109 rented by Athar on August 10,1996.

A. Conspiracy and the Statute of Limitations

To resolve Athar's claim of instructional error we first set out some basic principles pertaining to conspiracy and the statute of limitations. As recently explained in People v. Russo (2001) 25 Cal.4th 1124, 108 Cal.Rptr.2d 436, 25 P.3d 641 (Russo), in California a "`conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.' " (Id. at p. 1131, 108 Cal.Rptr.2d 436, 25 P.3d 641, quoting People v. Morante (1999) 20 Cal.4th 403, 416, 84 Cal. Rptr.2d 665, 975 P.2d 1071.) While an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt, the overt act element "consists only of an overt act, not a specific overt act." (Russo, supra, 25 Cal.4th at p. 1134, 108 Cal. Rptr.2d 436, 25 P.3d 641.) Further, the overt act need not itself be criminal. (Id. at p. 1135, 108 Cal.Rptr.2d 436, 25 P.3d 641.) Thus, a jury need only agree that any one overt act was committed, even if they disagree as to which particular overt act was committed. (Ibid.) Also, any one of the conspirators, not necessarily the charged defendant, may commit the overt act to consummate the conspiracy. (Ibid.) "Disagreement as to who the coconspirators were or who did an overt act, or exactly what that act was, does not invalidate a conspiracy conviction, as long as a unanimous jury is convinced beyond a reasonable doubt that a conspirator did commit some overt act in furtherance of the conspiracy. When two or more persons combine to commit a crime, the jury need not agree on exactly who did what as long as it is convinced a particular defendant committed the crime regardless of what that defendant's precise role may have been." (Id. at pp. 1135-1136, 108 Cal. Rptr.2d 436, 25 P.3d 641.)
With respect to the statute of limitations in conspiracy cases, courts have long held the statute commences from the date of the commission of the last overt act committed in furtherance of the conspiracy. (People v. Zamora (1976) 18 Cal.3d 538, 548-549 & fn. 7, 134 Cal.Rptr. 784, 557 P.2d 75 (Zamora); People v. Crosby (1962) 58 Cal.2d 713, 728, 25 Cal.Rptr. 847, 375 P.2d 839.) To sustain a conspiracy conviction, the jury need not find that all the overt acts underlying the conspiracy took place within the limitations period, as long as one overt act occurred within that time: "Proof that one of the overt acts in furtherance of the conspiracy occurred after the time before which the statute of limitations would be a bar is sufficient, and evidence of acts occurring before that time may be received to show the conspiracy." (Bompensiero v. Superior Court (1955) 44 Cal.2d 178, 184-185, 281 P.2d 250, citing People v. Gordon (1945) 71 Cal.App.2d 606, 629, 163 P.2d 110 (Gordon); see also People v. Crosby, at p. 728, 25 Cal.Rptr. 847, 375 P.2d 839; People v. Legerretta (1970) 8 Cal.App.3d 928, 934, 87 Cal.Rptr. 587.) However, in dicta, the Russo court observed *17 in conspiracy cases where there is a question regarding the statute of limitations, a trial court may be required to give a form of unanimity instruction obligating the jury to agree an overt act was committed within the limitations period. (Russo, supra, 25 Cal.4th at p. 1136, fn. 2, 108 Cal.Rptr .2d 436, 25 P.3d 641, citing Zamora, supra, 18 Cal.3d at p. 548, 134 Cal. Rptr. 784, 557 P.2d 75.)

B. Athar Has Forfeited the Right to Raise Claims Relating to the Statute of Limitations By Failing to Raise the Defense in the Trial Court

With these principles in mind, we are compelled to agree with the People and conclude Athar has lost the right to raise the asserted instructional error for the first time on appeal under People v. Williams (1999) 21 Cal.4th 335, 87 Cal. Rptr.2d 412, 981 P.2d 42 (Williams) and Smith, supra, 98 Cal.App.4th 1182, 120 Cal.Rptr.2d 185. In Williams, the court decided whether a defendant could inadvertently forfeit the statute of limitations and be convicted of a time barred offense. (Williams, 21 Cal.4th at p. 338, 87 Cal. Rptr.2d 412, 981 P.2d 42.) It held when the charging document indicates on its face the charge is untimely and the defendant does not expressly waive the defense, the defendant may raise the statute of limitations at any time. (Id. at pp. 338, 341, 342, 87 Cal.Rptr.2d 412, 981 P.2d 42.) The court emphasized its decision was limited to those cases in which the prosecution files a charging document that indicates on its face the offense is time-barred: "`[W]here the pleading of the state shows that the period of the statute of limitations has run, and nothing is alleged to take the case out of the statute ... the power to proceed in the case is gone.' [Citation.] [This rule] does not apply to an information that, as it should, either shows that the offense was committed within the time period or contains tolling allegations. Although, under our cases, defendants may not forfeit the statute of limitations if it has expired as a matter of law, they may certainly lose the ability to litigate factual issues such as questions of tolling." (Id. at p. 344, 87 Cal.Rptr.2d 412, 981 P.2d 42.)
In Smith, the court of appeal addressed the defendant's contention that various convictions had to be reversed in part because the trial court failed to instruct the jury on the applicable statute of limitations. (Smith, supra, 98 Cal.App.4th at pp. 1186-1187, 1192, 120 Cal.Rptr.2d 185.) At issue were the defendant's convictions on multiple counts. (Id. at p. 1185, 120 Cal.Rptr.2d 185.) Before trial, the defendant moved to dismiss certain counts, which were plainly barred on the face of the charging document, on the ground they fell outside the applicable limitations period. (Id. at p. 1187, 120 Cal.Rptr.2d 185.) He did not raise any objection to other counts in the trial court. (Id. at p. 1193, 120 Cal.Rptr .2d 185.) As to these latter counts, the Smith court held the trial court did not err by failing to instruct the jury sua sponte on the statute of limitations: "As a general rule, the trial court need only instruct on the statute of limitations when it is placed at issue by the defense as a factual matter in the trial." (Id. at p. 1192, 120 Cal.Rptr.2d 185.) The Smith court reasoned that to require the trial court to instruct the jury sua sponte on the statute of limitations in cases where the defendant did not raise the issue at trial "would render moot the discussion in Williams as to whether the defendant may raise a statute of limitations claim for the first time on appeal. If the trial court has a sua sponte duty to instruct on the statute of limitations, even if factually not placed at issue by the defendant at trial, there would never have been an issue as to forfeiture of the right to raise the statute *18 of limitations for the first time on appeal; the claim always would be preserved under the rubric of instructional error for failure to give a required instruction sua sponte. As the court clarified in Williams, when an appellate court is reviewing a statute of limitations question after a conviction for the charged offenses, the proper question is whether the record demonstrates that the crime charged actually fell within the applicable statute of limitations." (Smith, supra, 98 Cal.App.4th at pp. 1192-1193, 120 Cal.Rptr.2d 185.)
Here, the indictment did not on its face reveal that the statute of limitations had expired as a matter of law; to the contrary, it alleged 19 overt acts occurring within the three-year period before the pleading was filed on July 2, 1999. As stated, only one overt act committed by any conspirator need have occurred within the limitations period; the fact others occurred outside the limitations period does not render the conspiracy count untimely. Thus, the present case requires that we simply apply the necessary corollary of Williams's holding: where the pleading is facially sufficient, i.e., it does not indicate the offense is time barred as a matter of law, the defendant must raise the statute of limitations in the trial court or lose the ability to raise the issue on appeal. (Williams, supra, 21 Cal.4th at p. 345, 87 Cal.Rptr.2d 412, 981 P.2d 42; People v. Padfield (1982) 136 Cal.App.3d 218, 226, 185 Cal.Rptr. 903["[W]hen the pleading is facially sufficient, the issue of the statute of limitations is solely an evidentiary one. The sufficiency of the evidence introduced on this issue does not raise a question of jurisdiction in the fundamental sense"].) In such a case, the limitations defense is an evidentiary defect that should be subject to principles of forfeiture.[5] (E.g., People v. Mower (2002) 28 Cal.4th 457, 474, fn. 6, 122 Cal.Rptr.2d 326, 49 P.3d 1067 [observing issues not relating to jurisdiction in its fundamental sense may be subject to bars including waiver and forfeiture].) Under the circumstances, Athar's failure to raise the limitations defense in the trial court prevents him from raising the issue for the first time before us on appeal.

C. Apart from Forfeiture, Any Instructional Error is Harmless Because There is Abundant Evidence from which the Jury Could Find An Overt Act Occurred Within the Limitations Period

Even if we were to hold the court erred by failing to sua sponte instruct the jury as Athar urges, we would nevertheless find the error harmless even under the more stringent federal constitutional error standard of Chapman v. California (1967) 386 U.S. 18, 36, 87 S.Ct. 824, 17 L.Ed.2d 705.[6] We reject the contention *19 that failure to instruct on the statute of limitations is an error to which a per se reversal standard applies, and thus depart from this court's earlier suggestion in People v. Bell (1996) 45 Cal.App.4th 1030, 1065, 53 Cal.Rptr.2d 156 (Bell) that misinstruction on the statute of limitations may result in an error affecting the structural integrity of the process.[7] As the court recognized in People v. Stanfill (1999) 76 Cal. App.4th 1137, 1154, 90 Cal.Rptr.2d 885, Bell was decided without the benefit of authority holding missing instructions on an element of the offense is due process error generally subject the Chapman standard of error. (People v. Stanfill, 76 Cal. App.4th at pp. 1153-1154, 90 Cal.Rptr.2d 885.)
Under that standard, "error is harmless `where an omitted element is supported by uncontroverted evidence,' as `where a defendant did not, and apparently could not, bring forth facts contesting the omitted element....' [Citation.] Stated differently: `[A] court ... asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" (People v. Stanfill, supra, 76 Cal.App.4th at p. 1154, 90 Cal.Rptr.2d 885, quoting Neder v. United States (1999) 527 U.S. 1, 18-19, 119 S.Ct. 1827, 144 L.Ed.2d 35.) Here, the record contains abundant evidence from which the jury could find (and indeed had to find) beyond a reasonable doubt several overt acts occurring within the limitations period. First, one of the conspirators, Tariq, testified at trial he was the maker of a $9,800 check drawn on a Well's Fargo bank account in 1996; that check, identified on Exhibit 61A as no. 1007, was written within the limitations period (July 17, 1996) and was pleaded by the People as overt act no. 39. Further, an investigating detective testified without objection that on August 27, 1996, another conspirator, Khan, opened storage unit no. E147 which was found to contain approximately 2,300 units of counterfeit software. Khan's act of renting storage unit no. E147 was pleaded by the People as overt act no. 46. As stated, the jury was not required to find that Athar himself committed an overt act within the limitations period in order to find him guilty of conspiracy: "[A]ny one of the conspirators, and not necessarily the charged defendant, may commit the overt act to consummate the conspiracy." (Russo, supra, 25 Cal.4th at p. 1135, 108 Cal. Rptr.2d 436, 25 P.3d 641.)
Additionally, the jury returned a guilty verdict against Athar for violation of section 350, subdivision (a)(2) based on his possession of 1,000 or more counterfeit marks. That section applies to a person "who willfully manufactures, intentionally sells, or knowingly possesses for sale any counterfeit of a mark registered with the Secretary of State or registered on the principal register of the United States Patent and Trademark Office ...." (§ 350, *20 subd. (a)(2).) The People proceeded on the theory that Athar possessed the counterfeit marks for sale. Subdivision (e)(3) of section 350 provides: "`Knowingly possess' means that the person possessing an article knew or had reason to believe that it was spurious, or that it was used on or in connection with spurious articles, or that it was reproduced without authorization of, or in excess of any authorization granted by, the registrant." At trial, Athar admitted he personally placed the counterfeit software (later determined to be between 1,100 and 1,300 units) into his storage unit no. B109. The evidence was undisputed Athar rented that storage space on August 10, 1996, within the limitations period. Athar does not challenge the sufficiency of the evidence underlying this conviction, and we may easily conclude the jury's verdict on this count could only have been based on Athar's possession of the over 1,000 items of counterfeit units within the storage unit no. B109 rented under his own name. By necessity, to reach the issue of possession the jury had to have found Athar rented the unit in August 1996alleged in the indictment as overt act (no. 41) within the limitations period.
In his reply brief, Athar does not challenge the evidence of his rental or the jury's implied finding on this pointhe merely argues the jury may not rely on the overt act of his rental of the unit because there is ample evidence to suggest the conspiracy if any had terminated by the time he rented it; that by August of 1996, the conspiracy was "unraveling" and there was evidence the conspirators were not working together. He relies on the proposition that once an agreement has terminated and a new one takes its place, the old conspiracy is complete and the statute of limitations begins to run even though a new conspiracy has replaced it.
We will not consider such argument raised for the first time in Athar's reply brief. (See People v. Senior (1995) 33 Cal. App.4th 531, 537, 41 Cal.Rptr.2d 1.)
In sum, we may readily infer the jury found beyond a reasonable doubt that the above-identified overt acts occurred. Because each occurred within the applicable limitations period, we conclude on this record the absence of an instruction on the statute of limitations was harmless under beyond a reasonable doubt.

II. Section 186.10 Enhancement

A. Athar's Sentence was Properly Enhanced under Section 186.10, Subdivision (c) Because Conspiracy to Commit Money Laundering is Punishable in the Same Manner as the Substantive Offense of Money Laundering

We begin with the question posed by the Supreme Court: whether a money laundering enhancement under section 186.10, subdivision (c) can be imposed here where Athar was convicted not of the substantive offense of money laundering, but of conspiracy to commit money laundering. Resolution of the question turns on the language of section 186.10, particularly subdivisions (a) and (c), and of section 182, the conspiracy statute.
In 1996, section 186.10 read in part:
"(a) Any person who conducts or attempts to conduct a transaction or more than one transaction within a 24-hour period involving a monetary instrument or instruments of a total value exceeding five thousand dollars ($5,000), through one or more financial institutions (1) with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any criminal activity, or (2) knowing that the monetary instrument represents the proceeds of, or is *21 derived directly or indirectly from the proceeds of, criminal activity, is guilty of the crime of money laundering.... A violation of this section shall be punished by imprisonment in a county jail for not more than one year or in the state prison, by a fine of not more than two hundred fifty thousand dollars ($250,000) or twice the value of the property transacted, whichever is greater, or by both that imprisonment and fine. However, for a second or subsequent conviction for a violation of this section, the maximum fine that may be imposed is five hundred thousand dollars ($500,000) or five times the value of the property transacted, whichever is greater.
"(b) Notwithstanding any other law, for purposes of this section, each individual transaction conducted in excess of five thousand dollars ($5,000), or each series of transactions conducted within a 24hour period that total in excess of five thousand dollars ($5,000), shall constitute a separate, punishable offense.
"(c)(1) Any person who is punished under subdivision (a) by imprisonment in the state prison shall also be subject to an additional term of imprisonment in the state prison as follows:
* * *
"(D) If the value of the transaction or transactions exceeds two million five hundred thousand dollars ($2,500,000), the court, in addition to and consecutive to the felony punishment otherwise prescribed by this section, shall impose an additional term of imprisonment of four years.
"(2)(A) An additional term of imprisonment as provided for in this subdivision shall not be imposed unless the facts of a transaction or transactions, or attempted transaction or transactions, of a value described in paragraph (1), are charged in the accusatory pleading, and are either admitted to by the defendant or are found to be true by the trier of fact. "(B) An additional term of imprisonment as provided for in this subdivision may be imposed with respect to an accusatory pleading charging multiple violations of this section, regardless of whether any single violation charged in that pleading involves a transaction or attempted transaction of a value covered by paragraph (1), if the violations charged in that pleading arise from a common scheme or plan and the aggregate value of the alleged transactions or attempted transactions is of a value covered by paragraph (1).
"(d) All pleadings under this section shall remain subject to the rules of joinder and severance stated in Section 954."
Section 182, subdivision (a) provides that if two or more persons conspire to commit felonies other than those specifically identified, "[t]hey shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony." (§ 182, subd. (a).)
In supplemental briefing on the issue, Athar contends his sentence cannot be enhanced under section 186.10 absent the prosecution's pleading of discrete money laundering transactions or the jury's finding he had the specific intent to launder a specific amount of money that would trigger an enhancement. We have previously rejected these arguments and do so again in part II.B. post. More pertinent to the question we have been asked to consider, Athar also contends the enhancement cannot apply absent express statutory authorization, and under a reasonable interpretation of the money laundering statute there is no basis to impose the enhancement because he was punished under section 182 for the conspiracy, not under section 186.10 subdivision (a). In response to our *22 additional request that the parties address certain principles of statutory construction recently applied by the California Supreme Court in People v. Hernandez (2003) 30 Cal.4th 835, 134 Cal.Rptr.2d 602, 69 P.3d 446, Athar further argues the Legislature could not have intended to apply the money laundering enhancement to the crime of conspiracy to commit money laundering because a defendant cannot qualify for the enhancement without actually committing the substantive crime of money laundering. He maintains where the money laundering crime is actually completed, the defendant would then be directly liable for that crime under a conspiracy theory and a prosecutor would never have any need to apply the enhancement to the crime of conspiracy. He also maintains we should adopt his interpretation under the rule of lenity, which requires a court to construe an ambiguous penal statute in the defendant's favor when two reasonable interpretations stand in relative equipose. (Id, at p. 869, 134 Cal.Rptr.2d 602, 69 P.3d 446; People v. Avery (2002) 27 Cal.4th 49, 58, 115 Cal.Rptr.2d 403, 38 P.3d 1.)
The People, on the other hand, point out section 186.10, subdivision (c), by its plain language, does not require a defendant be convicted of the offense under section 186.10, subdivision (a), only that he be punished under that subdivision. They argue section 182 subjects Athar to the very same punishment as if he had been convicted of a substantive violation of section 186.10, and punishment "in the same manner and to the same extent" necessarily includes sentence enhancements. The People maintain the rule of lenity does not apply because there is no true ambiguity that would justify invoking the rule.
We agree with the People. Although conspiracy is separate and distinct from the substantive crime that is its object, punishment for a conspiracy to commit a felony such as money laundering is the same as that for the target crime. (§ 182, subd. (a).) The language of section 182 needs no interpretation. (People v. Gardeley (1997) 14 Cal.4th 605, 621, 59 Cal.Rptr.2d 356, 927 P.2d 713 [when the language of a statute is clear and unambiguous and thus not reasonably susceptible of more than one meaning, there is no need for construction, and courts should not indulge in it].) Applying its plain terms, a court sentencing a defendant for conspiracy to commit money laundering must refer to the target offense of money laundering in order to impose the type of punishment and term of imprisonment. The sentence for the conspiracy conviction is therefore imposed pursuant to, or "under" the statute for the underlying offense. Here, that statute is section 186.10, subdivision (a), and for purposes of section 186.10, subdivision (c)(1), Athar was "punished under subdivision (a) by imprisonment in the state prison...."[8]
Athar points to drug offense statutes such as Health and Safety Code section 11370.4, subdivision (a) in which the Legislature specifically provided for weight enhancements where a "person has been convicted of a violation of, or of a conspiracy to violate," certain other drug trafficking offenses. (Health & Saf.Code, § 11370.4, subd. (a), emphasis added.)[9] *23 He argues "[a] conviction for violating Penal Code section 186.10 is not a conviction for violating section 182." We are not persuaded. As we have stated, imposition of the money laundering enhancements, unlike the enhancements set out in Health and Safety Code section 11370.4, subdivision (a) or similar statutes, does not turn on conviction of the crime of money laundering; Penal Code section 186.10, subdivision (c) is significantly different because it subjects a defendant to an enhanced sentence where he or she has been punished under section 186.10, subdivision (a). The Legislature's choice of words is usually the best indicator of its intent. (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826, 25 Cal.Rptr.2d 148, 863 P.2d 218; In re Carr (1998) 65 Cal.App.4th 1525, 1530, 77 Cal.Rptr.2d 500.) We presume the Legislature, when it amended section 186.10 in 1994 to add the enhancement provision of subdivision (c) (Stats. 1994, ch. 1187, § 2, p. 7167), was aware of the significance of its choice of words. By 1994, it had amended the above-cited drug weight enhancement statutes so that they applied not only to persons convicted of specified offenses, but also to persons convicted of conspiracies to violate those offenses. (People v. Duran, supra, 94 Cal. App.4th at pp. 939-940, 114 Cal.Rptr .2d 595; People v. Porter (1998) 65 Cal. App.4th 250, 253, 75 Cal.Rptr.2d 914.) Had the Legislature intended to apply the money laundering enhancements to only those persons convicted of the substantive offense of money laundering, it would have so provided in subdivision (c) of section 186.10.
We are compelled also by the reasoning of the Fifth District Court of Appeal in People v. Villela (1994) 25 Cal.App.4th 54, 30 Cal.Rptr.2d 253, relied upon by the People, in which the court held a defendant was properly required to register as a narcotics offender under Health and Safety Code section 11590, even though he was convicted of conspiracy to commit one of the offenses enumerated in that section, and not the offense itself. (People v. Villela, at pp. 59-61, 30 Cal.Rptr.2d 253.) Although the case is not directly analogous, the court's decision turned on the "same manner ... same extent" language of Penal Code section 182 and on the proposition that the registration requirement is a punishment. (People v. Villela, at pp. 59-61, 30 Cal.Rptr.2d 253.) The court of appeal found its conclusion a logical one given the fact a conspiracy conviction requires proof of both the specific intent to conspire and the specific intent to commit the offense that is the subject of the conspiracy. (Id. at p. 61, 30 Cal.Rptr.2d 253; People v. Morante (1999) 20 Cal.4th 403, 416, 84 Cal.Rptr.2d 665, 975 P.2d 1071.) "It would be patently absurd to require a person who committed the general intent crime of transporting heroin to register as a narcotics offender while failing to require a person convicted of a crime requiring the formulation of specific intent to transport heroin to register." (People v. Villela, 25 Cal.App.4th at p. 61, 30 Cal.Rptr.2d 253.)
Here, there is no question the sentence enhancements of section 186.10 are punishment. *24 (§ 666.7 [sentence enhancements are additional terms of imprisonment in the state prison added to the base term for the underlying offense].) Given the increased risks to society posed by conspiracies (see People v. Morante, supra, 20 Cal.4th at pp. 416-417, fn. 5, 84 Cal. Rptr.2d 665, 975 P.2d 1071; People v. Alleyne (2000) 82 Cal.App.4th 1256, 1261-1262, 98 Cal.Rptr.2d 737), we see no policy reason why a person convicted of conspiracy to launder a particular sum of money, having been found to have the specific intent for that target offense, should not be subject to the enhanced sentence of one convicted of the money laundering offense itself.
Athar's statutory construction arguments are not persuasive. While he asks that we look at the effect of the statute to discern legislative intent, we see nothing in the relevant statutory language indicating the Legislature intended that an enhancement should not apply to a person convicted only with conspiracy to commit money laundering transactions actually accomplished by his coconspirators. And the fact actual laundering transactions must take place to trigger the enhancement, assuming that to be true, would further justify imposing an enhanced sentence on a defendant who is charged only with conspiracy, as Athar was here. In that circumstance, defendants who form the specific intent to agree to launder a certain sum of money, and perform an overt act in furtherance of that agreement would nevertheless avoid an increased sentence if the transaction did not actually take place. Nor do we apply the rule of lenity. "`The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.'" (People v. Avery, supra, 27 Cal.4th at p. 58, 115 Cal.Rptr.2d 403, 38 P.3d 1, quoting 1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, p. 53.) Our conclusion is based on the plain language of sections 186.10 and 182; we cannot agree an ambiguity exists in either statute to justify applying this principle.

B. Athar's Contentions

We now turn to Athar's several contentions in support of striking the section 186.10 enhancement and reject each in turn.

1. Sufficiency of the Indictment

Athar first contends the indictment did not charge the facts of each individual transaction or transactions of the requisite value under subdivision (c)(2)(A) of section 186.10.
Not only did Athar waive the alleged deficiency by failing to demur to the indictment below (People v. Holt (1997) 15 Cal.4th 619, 672, 63 Cal.Rptr.2d 782, 937 P.2d 213) but his assertion that the indictment "cannot be a basis on which to convict [him] on the enhancement" is without citation to authority. We need not address such a perfunctory and unsupported contention. (See People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481.) But doing so, we point out Athar ignores the fact the People alleged he participated in a conspiracy to commit continuing, multiple acts of money laundering. As such, the operative portion of the money laundering statute is section 186.10, subdivision (c)(2)(B), which as the People point out, requires only that the accusatory pleading charge "multiple violations of this section" arising from a "common scheme or plan." (§ 186.10, subd. (c)(2)(B).) As Athar apparently concedes, multiple violations arising from a common plan or scheme as contemplated by section 186.10, subdivision (c)(2)(B) are not subject *25 to the 24-hour requirement, as the subdivision permits the jury to aggregate the value of multiple transactions (each individually, but not collectively, occurring within a 24-hour period) arising from a common scheme or plan to impose the enhancement. And we do not interpret the statute to require the facts of each individual aggregated transaction be charged; as the People point out, in complex and sophisticated money laundering conspiracies, defendants intentionally limit transactions to amounts under $10,000 in order to avoid federal reporting requirements. Thus, requiring such allegations in conspiracies continuing over a substantial period of time, as this one, would force the prosecution to set forth hundreds of separate charges to allege the section 186.10, subdivision (c)(2)(B) enhancement. We will not interpret the statute in such an unreasonable manner.[10]
Further, no indictment is insufficient by reason of any defect or imperfection of its form so long as no substantial right of the accused is prejudiced upon the merits of the case. (§ 960; Gordon, supra, 71 Cal.App.2d at p. 611, 163 P.2d 110.) "In no event shall a judgment be reversed because of an error in the form of the indictment `unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (Gordon, 71 Cal.App.2d at p. 611, 163 P.2d 110.) Here, the People alleged that the object of defendants' conspiracy was to "continuously create and operate a network of `front' computer software stores for the sale and distribution of counterfeit software and to recover the profits derived therefrom and to open several bank accounts in the name of the defendants and in fictitious business names of persons and businesses in order to facilitate the concealment of the origin of cash proceeds in excess of $2,500,000.00." This allegation gave Athar sufficient notice that the People charged multiple financial transactions collectively amounting to over $2.5 million, as did the proof at trial. But even if the indictment was somehow technically deficient, Athar heard the evidence at trial and from all the facts and circumstances cannot now maintain he was unaware of the charges against him or had no opportunity to meet those charges. (E.g. People v. Paul (1978) 78 Cal.App.3d 32, 43-4, 144 Cal.Rptr. 431 [technical error in failing to allege overt act was not prejudicial where the defendant was fully aware of all the overt acts, had the benefit of discovery and was aware of the evidence against him].)

2. Instructional Error

Athar next contends the court failed to instruct the jury on the elements of the enhancement, including that the enhancement can be found true only if $2.5 million was laundered within a 24-hour period. He maintains: "As the indictment did not charge appellant with multiple violations of section 186.10, it follows that the jury should have been instructed that it could only find appellant guilty of the enhancement if it found that $2,500,000 had been laundered within a 24-hour period."
This reasoning fails because we have already rejected the premise that the indictment failed to charge multiple violations *26 of section 186.10. As for Athar's other contentionthat the jury was not instructed at all on the enhancementthe People concede the jury should have been instructed it could aggregate the transactions if it found they arose from a common plan or scheme, but that the court's failure to so instruct was harmless because the jury found such a common plan or scheme by convicting Athar of conspiracy.
We agree no prejudice resulted from the court's failure to provide an instruction relating to the enhancement. Athar points out the jury was given a verdict form reading: "And we further find that the value of the transaction or transactions exceeded two million five hundred thousand dollars ($2,500,000) within the meaning of Penal Code section 186.10." He argues: "Thus, the jury was invited to simply add up all the transactions regardless of amount and regardless of when they occurred to determine whether they exceeded the $2,500,000 threshold." As we have stated, subdivision (c)(2)(B) of section 186.10 contemplates precisely that when dealing with multiple transactions arising from a common scheme or plan, which the jury necessarily found when it reached its guilty verdict against Athar on the crime of conspiracy. On this basis, we conclude the court's failure to instruct the jury on the enhancement was harmless beyond a reasonable doubt. (People v. Sengpadychith (2001), 26 Cal.4th 316, 320, 327, 109 Cal.Rptr.2d 851, 27 P.3d 739 [standard of review where trial court fails to instruct on factual element of enhancement].)

3. Sufficiency of the Evidence

Athar finally contends the evidence is insufficient to support the section 186.10 enhancement because it fails to demonstrate that $2.5 million was laundered within the applicable three-year limitations period.[11] He argues if it is permissible to aggregate individual transactions for purposes of the enhancement, only those transactions occurring within the limitations periodi.e., between July 2, 1999, and September 6, 1999, when the conspiracy endedmay be combined, and because those do not reach the $2.5 million threshold, the enhancement must be stricken. He cites no authority for this proposition.
The People concede that only approximately $800,000 of the $2.5 million in transactions took place after July 2, 1996. Nevertheless, the People argue, the evidence is sufficient for the jury to conclude the object of the conspiracy was to launder $2.5 million; because the object of the conspiracy need not be accomplished for the conspiracy's completion, it is irrelevant that some of the transactions took place outside the limitations period.
We agree the limitations period is irrelevant when aggregating transactions for purposes of the section 186.10 enhancement, not for the reason expressed by the People, but because enhancements are not, and should not be treated as, substantive crimes. (People v. Dennis (1998) 17 Cal.4th 468, 500, 71 Cal.Rptr.2d 680, 950 P.2d 1035 (Dennis); People v. Morris (1988) 46 Cal.3d 1, 16, 249 Cal.Rptr. 119, 756 P.2d 843, disapproved on another point in In re Sassounian (1995) 9 Cal.4th 535, 543-545, fns. 5, 6, 37 Cal.Rptr .2d 446, 887 P.2d 527.) In Dennis, the court explained: "`[I]n our statutory scheme sentence enhancements are not "equivalent" to, nor do they "function" as, substantive offenses. *27 Most fundamentally, a sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense. [Citation.]....'" (Dennis, 17 Cal.4th at p. 500, 71 Cal.Rptr.2d 680, 950 P.2d 1035; see also People v. Garcia (2002) 28 Cal.4th 1166, 1174, 124 Cal.Rptr.2d 464, 52 P.3d 648.)
Here, the enhancement is based on the theory that Athar and his coconspirators agreed to a common plan, namely, to conceal the proceeds of their counterfeit sales by engaging in multiple financial transactions with the object of laundering over $2.5 million. As we have discussed above, the crime of conspiracy is complete when the agreement is effected and just one overt act in furtherance thereof has been committed within the limitations period. (Russo, supra, 25 Cal.4th at pp. 1131,1135, 108 Cal.Rptr.2d 436, 25 P.3d 641; Zamora, supra, 18 Cal.3d at p. 548, 134 Cal.Rptr. 784, 557 P.2d 75.) Thus, the fact some transactions underlying the conspiracy did not take place within the limitations period does not invalidate the conspiracy conviction, as long as there is substantial evidence of one transaction or overt act in furtherance of the conspiracy occurring within that period. We see no reason to depart from this rule when dealing with a sentence enhancement that permits a jury to aggregate violations committed in furtherance of an underlying conspiracy. If we were to interpret the enhancement statute in the manner urged by Athar, we would impose additional punishment only for the aggregate of those transactions occurring within the limitations period; under this interpretation defendants could launder large sums of money over the course of many years as part of an ongoing conspiracy, and would not suffer additional punishment for the high total value of the transactions if the conspiracy was not discovered until well after three years into its course. We decline to read the enhancement statute to such end and, accordingly, reject Athar's sufficiency of the evidence argument.

DISPOSITION
The judgment is affirmed.
I CONCUR: McCONNELL, J.
McDONALD, Acting P.J., Concurring and Dissenting.
I agree with the majority opinion except its response to the issue raised by the Supreme Court, and as to that issue I disagree. I conclude that the money laundering enhancement set forth in Penal Code section 186.10, subdivision (c)[1] applies only to convictions of the offense of money laundering described in section 186.10, subdivision (a) and not to a conviction of the offense of conspiracy to commit money laundering described in section 182, subdivision (a).
Section 186.10, subdivision (a) provides that "[a]ny person who conducts ... a transaction . . . involving a monetary instrument ... exceeding [a certain amount] through one or more financial institutions (1) with the specific intent to promote, manage, establish ... or facilitate the promotion ... of any criminal activity, or (2) knowing that the monetary instrument ... is derived ... from the proceeds of ... criminal activity, is guilty of the crime of money laundering.... [¶] A violation of this section shall be punished by imprisonment in a county jail for not more than one year or in the state prison...." The enhancement set forth in section 186.10, subdivision (c)(1) provides that "[a]ny person *28 who is punished under subdivision (a) by imprisonment in the state prison shall also be subject to an additional term of imprisonment in the state prison ...: [¶] ... [¶] (D) ... of four years [if the transaction has a value in excess of $2,500,000.00]."
Athar was not convicted of money laundering under section 186.10, subdivision (a) but rather of conspiracy to commit any crime, in this case money laundering, under section 182, subdivision (a)(1). The punishment for commission of conspiracy to commit a crime that is a felony[2] is "in the same manner and to the same extent as is provided for the punishment of that felony." (§ 182, subd. (a).)
The issue presented to us by the Supreme Court is whether, considering its recent case of People v. Hernandez (2003) 30 Cal.4th 835, 134 Cal.Rptr.2d 602, 69 P.3d 446, the enhancement set forth in section 186.10, subdivision (c)(1) applies to a conviction of conspiracy to commit money laundering under section 182 as well as to a conviction of money laundering under section 186.10, subdivision (a). In Hernandez, the Supreme Court held that the special circumstance enhancements to murder, which increase the penalty for murder to death or life imprisonment without the possibility of parole, do not apply to the offense of conspiracy to commit murder even though section 182 provides that the punishment for conspiracy to commit murder "shall be that prescribed for murder in the first degree." (Hernandez, at pp. 864-870, 134 Cal.Rptr.2d 602, 69 P.3d 446.)
In a rather facile manner, the majority opinion finds the statutory framework for punishment for conspiracy to be without ambiguity and without the need for interpretation, a conclusion that might surprise the Supreme Court, which in Hernandez undertook an extensive examination of the uncertainty in that framework. The majority opinion concludes that the punishment for conspiracy to commit a crime is identical to the punishment for the target crime, including enhancements, because the enhancement is applicable to any person punished under the target crime statute. Its conclusion is simply that section 186.10, subdivision (c)(1) provides that "[a]ny person who is punished under subdivision (a)" is subject to the additional enhancement terms; because section 182 provides that the punishment for conspiracy is the same as for the target crime, the person is being punished under the target crime statute and the target crime enhancements therefore apply to the conspiracy conviction.
It takes little imagination to realize the majority opinion's conclusion is not as self-evident as it purports to be. Its conclusion is based on the premise that a person convicted of conspiracy (§ 182) is punished under the target crime statute (§ 186.10, subd. (a)) merely because reference is made to the target crime statute for the length of the sentence. It is at least as plausible to conclude that a person cannot be punished under a criminal statute defining a crime the person did not commit. Athar did not commit the crime of money laundering (§ 186.10, subd. (a)); he committed the crime of conspiracy (§ 182). Therefore, he was punished under the conspiracy statute for committing the crime of conspiracy; he was not punished under the money laundering statute because he did not commit the crime of money laundering. He was not punished for money laundering, *29 and therefore the enhancements of section 186.10, subdivision (c)(1) are not applicable because by the terms of that subdivision, it applies only if punishment is imposed under section 186.10, subdivision (a), not if punishment is imposed under section 182.
Because an interpretation of the sentencing scheme for conspiracy that concludes the section 186.10, subdivision (c)(1) enhancements do not apply to a conviction for conspiracy is at least as, if not more, plausible than an interpretation of the scheme that concludes the enhancements do apply, the former interpretation should be adopted under the authority of People v. Hernandez, supra, 30 Cal.4th 835, 864-870, 134 Cal.Rptr.2d 602, 69 P.3d 446. The ambiguity of the conspiracy sentencing scheme to money laundering is at least as great as the ambiguity of the conspiracy sentencing scheme to murder, which provides that the punishment for conspiracy to commit murder "shall be that prescribed for murder in the first degree." Because of the ambiguity, Hernandez held the special circumstance enhancements for murder do not apply to conspiracy to commit murder. The same result should obtain in this case and I would strike the enhancements added to Athar's punishment for conspiracy.
NOTES
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] In his opening brief, Athar does not challenge the evidence underlying his convictions for conspiracy or for manufacturing or sale of a counterfeit mark. His challenge to the sufficiency of evidence on the section 186.10 enhancement is not as to whether the laundering transactions occurred, but whether they (a) took place within the 24-hour time frame he contends section 186.10 requires and (b) took place within the applicable statute of limitations. We therefore set out an abbreviated version of the facts.
[3] The minutes on the court's pronouncement of judgment read: "As to alleg. ct. 1 pc 186.10-4 years consecutive." Athar does not dispute that the court sentenced the two-year midterm on count one for conspiracy to commit money laundering as opposed to conspiracy to commit the other target offense of manufacturing and selling a counterfeit mark (§ 350, subd. (a)(2)).
[4] Section 801 provides: "Except as provided in sections 799 and 800, prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense." Sections 799 and 800 are inapplicable here as they involve embezzlement of public money and offenses punishable by death, imprisonment for life, and imprisonment for eight years or more.
[5] We use the term forfeiture, as does the California Supreme Court, to indicate the concept of losing a right by failing to assert it. (Williams, supra, 21 Cal.4th at p. 340, fn. 1, 87 Cal.Rptr.2d 412, 981 P.2d 42.)
[6] In reaching this conclusion, we assume for the sake of argument the statute of limitations is an "essential element of the crime charged." Otherwise, we question the validity of that proposition. The California Supreme Court expressly rejected it in People v. Frazer (1999) 21 Cal.4th 737, 760-761, fn. 22, 88 Cal.Rptr.2d 312, 982 P.2d 180, (Frazer), when it said "[w]hatever its nature for various state law purposes . . . the statute of limitations is not an `element' of the offense insofar as the `definition' of criminal conduct is concerned." In June 2003, the United States Supreme Court abrogated Frazer's decision upholding section 803 subdivision (g) against federal constitutional ex post facto challenges. (Stogner v. California (2003) 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (Stogner).) But Stogner did not turn on the issue of whether the statute of limitations is an essential element of a criminal offense; its reasoning was based on the notion that it violated ex post facto principles for a new law to aggravate a crime i.e., inflict a punishment upon a person not previously subject to that punishment, and also to permit conviction on evidence where that evidence would have been "legally insufficient" before the new law was enacted. (Stogner, 539 U.S. at pp. 611-616, 123 S.Ct. at pp. 2450-2452.) Other California Supreme Court authority refutes the proposition. (See People v. Crosby, supra, 58 Cal.2d at p. 723, 25 Cal.Rptr. 847, 375 P.2d 839[holding an amendment merely adding or extending allegations tolling the statute of limitations would not change the offense charged, reasoning "`although the right to maintain the action is an essential element in the final power to pronounce judgment, that element constitutes no part of the crime itself.'".)
[7] Athar does not contend that the trial court's failure to instruct as urged requires that we assess the matter under prejudice theories applicable to unanimity instructions.
[8] We note that although the court sentenced Athar to imprisonment in state prison, he was not actually imprisoned there because he was granted probation. We would not interpret the statute so literally as to prohibit application of the enhancement under those circumstances. (Mountain Lion Foundation v. Fish & Game Com. (1997) 16 Cal.4th 105, 142, 65 Cal.Rptr.2d 580, 939 P.2d 1280 [courts must avoid statutory constructions that lead to illogical or absurd results].)
[9] Section 11370.4 states in part: "(a) Any person convicted of a violation of, or of a conspiracy to violate, Section 11351, 11351.5, or 11352 with respect to a substance containing heroin, cocaine base as specified in paragraph (1) of subdivision (f) of Section 11054, or cocaine as specified in paragraph (6) of subdivision (b) of Section 11055 shall receive an additional term as follows:...." See also Health & Safety Code sections 11370.2, 11379.8. (People v. Duran (2001) 94 Cal. App.4th 923, 939-940, 114 Cal.Rptr.2d 595 [interpreting and applying Health and Safety Code sections 11370.2, 11370.4-11379.8, which as originally enacted contained no mention of conspiracy; conspiracy language was added in 1989 to Health and Safety Code sections 11370.2 and 11370.4 and in 1992 to section 11379.8].)
[10] As stated, the rule of lenity is invoked only when `"two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable."' (People v. Farell (2002) 28 Cal.4th 381, 394, 121 Cal.Rptr.2d 603, 48 P.3d 1155.) We do not find Athar's proposed interpretation reasonable.
[11] We reach only the sufficiency of the evidence argument as it relates to the limitations period, as we have already addressed and rejected Athar's assertion that all of the transactions must occur within a 24-hour period.
[1] All statutory references are to the Penal Code.
[2] Money laundering is a wobbler and may be sentenced as either a misdemeanor or felony. (§ 186.10, subd. (a).) If sentenced as a felony, the prison term is 16 months, two years or three years. (§ 18.) Athar was sentenced to prison for the two-year midterm under section 186.10, subdivision (a).