Filed 1/6/15  P. v. Espinoza CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ELIAS AVILA ESPINOZA,<br><br>    Defendant and Appellant. | 2d Crim. No. B252267<br>(Super. Ct. No. 2011005151)<br>(Ventura County) |

A jury convicted appellant of attempting to defraud an insurer (Pen. Code, §§ 664/548, subd. (a))[1], attempted insurance fraud (§§ 664/550, subd. (a)(1)), and falsely reporting a criminal offense (§ 148.5, subd. (a)).  Appellant was sentenced to jail for 180 days as a condition of probation for three years.  Appellant contends the offenses of attempted insurance fraud are time-barred and that the court erred by receiving inculpating evidence of recorded conversations between an undercover officer and a witness.  We affirm.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

FACTS

*The People's Case*

In 2009, the California Department of Insurance participated with other law enforcement agencies in the investigation of criminal activity in Ventura County. Jose Velasquez, a Department undercover investigator, posed as a smuggler of drugs, guns and stolen vehicles. Jose Garcia was a car thief who is related to appellant and appellant's nephew Manny Lopez.

In April 2009 Garcia contacted Velasquez and told him that a friend owned a moving and storage business that was in financial trouble. Garcia said the friend intended to raise money by burning a box truck used in the business to recover its value through a fraudulent insurance claim. When asked by Velasquez, Garcia identified the friend as "Manny." Garcia said he told the owner that he knew someone who would "get rid of it and plus they'll pay us money for it." The several conversations between Velasquez and Garcia about the scheme were recorded and various text messages were saved.

Garcia and Velasquez agreed that Garcia would have appellant's truck delivered to Velasquez for a cash payment to be determined after Velasquez inspected the vehicle. Garcia assured Velasquez that the owner of the truck would not report it stolen or make the insurance claim until Velasquez had time to send the vehicle to Mexico. Police put the truck and appellant under surveillance on April 29, 2009 and saw appellant drive the vehicle from his business to his home and park it behind a locked gate.

Garcia delivered the truck to Velasquez on April 30, 2009. Acting as a broker for appellant and his nephew, Garcia consulted with another person by text message and agreed to accept $1,000 for the truck. Velasquez spoke only to Garcia about the transaction but said he knew Garcia was brokering the deal for the owner of the truck and the owner's nephew Manny.

On May 6, 2009, appellant falsely reported to the Oxnard Police Department that he parked his truck behind his business on April 29, 2009 and that it was stolen from that location that day. Appellant then falsely reported to his insurer that the

vehicle had been stolen. The insurer denied the claim because the appellant had neglected to request theft coverage when he insured the vehicle.

On May 7, 2009, Garcia telephoned Velasquez and told him about the complication appellant encountered with the insurance coverage and said the owner was willing to repay the $1,000 plus $200 or $300 more to get the truck back. Velasquez said the truck could not be recovered but he agreed to make a call to confirm that fact.

*The Defense*

Appellant's nephew Manny Lopez orchestrated the deal without appellant's knowledge or consent. The transcripts of the recorded statements show that appellant's name was never mentioned during any of Velasquez's conversations with Garcia and appellant never interacted with the undercover officer. The only name mentioned during Garcia's conversations with Velasquez was "Manny" who set the price to be paid and who directed Garcia's interactions with Velasquez. After Garcia turned over the truck to Velasquez, he was driven away from the exchange of the truck by Manny, not appellant.

PROCEDURAL HISTORY

Respondent filed a motion in limine for an order authorizing the admission of the recorded statements. Appellant opposed the motion. He claimed the recordings were hearsay and that the exception to the rule for statements of a coconspirator did not apply. (Evid. Code § 1223.)

At the hearing, appellant's counsel acknowledged there was a conspiracy to defraud an insurer and said the central issue for the jury was whether sufficient, admissible evidence showed appellant participated in the plot. Appellant's theory was that the recorded statements established his nephew Manny was Garcia's only coconspirator. Thus appellant's counsel agreed the recorded statements should be presented to the jury to show Manny was the only person ever referred to by name in Garcia's various conversations with Velasquez. Appellant's counsel stated, "We will be admitting, as the court indicated, through the conspiracy exception, statements of . . . Garcia." Appellant's counsel requested an admonition by the court that the remarks were only relevant if the jury determined appellant "knew or was party to the conspiracy."

3

Appellant's counsel explained, "If they find, yes, then obviously [the statements] come in under that section. If they find, no, they are to disregard all the stuff because it wouldn't be relevant."

The trial court provisionally authorized the use of the April 29 and 30 statements if Evidence Code section 1223 conditions were met that connected appellant to the conspiracy to defraud the insurer. The trial court also ruled the May 6 and 7 recorded statements were admissible to show Garcia's state of mind.

The admonition requested by appellant's counsel was included in the jury instructions. Counsel for the parties focused their closing arguments on the reasonable inferences they believed could reasonably be drawn from the recorded statements.

DISCUSSION

*Forfeiture*

Respondent contends appellant forfeited his right to appeal the admissibility of the recorded statements because he agreed they should be presented to the jury and because he did not make a hearsay objection or cite his constitutional right to confront Garcia at the pretrial hearing on respondent's in limine motion. We disagree.

Appellant's written opposition to respondent's in limine motion claims the recordings are inadmissible hearsay that did not qualify for the exception for out of court statements by a coconspirator. He also complained that he was denied his right to confront and cross-examine Garcia. The arguments at the pretrial hearing about the admissibility of the conversations between Velasquez and Garcia were focused precisely on these issues. Nothing about the briefs or the arguments can be construed as a waiver or forfeiture by appellant of these issues.

*The Out-of-Court Statements by Garcia and Lopez*

Appellant's conviction was based upon the jury's conclusion he conspired with Velasquez, Garcia and his nephew Manny to hide the truck and then make a false report to police that it was stolen so that he could fraudulently recover its value from his insurer. The trial court instructed the jury that to establish that appellant was a member of a conspiracy, the People had to prove: "1. [appellant] intended to agree . . . with

4

one or more . . . co-participants to commit insurance fraud; [¶] 2. [a]t the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit insurance fraud; [¶] 3. [o]ne of the . . . co-participants or all of them committed at least one of the following overt acts to accomplish the crime of insurance fraud: selling the truck to Velasquez; making a stolen vehicle report; and making the insurance claim." (CALCRIM No. 416.)

As to the out-of-court statements, the court instructed the jury that it could "not consider any statement made out of court by Jose Corona Garcia and Manny Lopez unless the People have proved by a preponderance of the evidence that: [¶] 1. [s]ome evidence other than the statement itself establishes that a conspiracy to commit a crime existed when the statement was made; [¶] 2. Jose Corona Garcia and Manny Lopez were members of and participating in the conspiracy when he made the statement; [¶] 3. Jose Corona Garcia and Manny Lopez made the statement in order to further the goal of the conspiracy; AND [¶] 4. [t]he statement was made before or during the time that [appellant] was participating in the conspiracy."

"Evidence is sufficient to prove a conspiracy to commit a crime 'if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1135; see *People v. Homick* (2012) 55 Cal.4th 816, 870 [the element of agreeing to commit a crime "must often be proved circumstantially"].)

Thus, if some evidence other than the statements of Garcia shows that it is more likely than not that appellant participated in the scheme to get rid of the truck and defraud his insurer, then Garcia's out-of-court statements were admissible evidence the jury could consider in determining whether or not to convict him. Appellant's counsel put it this way in his closing argument: "The law is [*sic*] complicated. All you need to

5

know is, if he was in on it and he knew, he is guilty. If he didn't know, he is not guilty. That is it."

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

Here, substantial evidence other than Garcia's statements supports the jury's conclusion appellant "was in on it and knew." The jury could reasonably conclude much of the information about the truck, viz., the need to get rid of it and its location from time to time, could only have come from appellant. Appellant was the only person who could report the "theft" and make the insurance claim, and he did. Only appellant would have received the insurance proceeds if he had the foresight to include coverage for theft in his automobile insurance coverage. Appellant was untruthful when he told police he last saw the truck on April 29 parked behind his business when in truth he was seen driving it on that day and was seen parking it behind his house, not his business, and securing it behind a locked gate. The jury could reasonably disbelieve appellant's claim that he did not realize his box truck was missing until May 6, 2009.

6

*The Right to Confront Witnesses*

Where, as here, a person who is unavailable as a witness inculpates himself and another person in conversations with an undercover law enforcement officer, his statements, if trustworthy, are admissible. Such statements are declarations against penal interest, are not "testimonial," and their admission does not violate the confrontation clause. (*Crawford v. Washington* (2006) 541 U.S. 36.)

We review the trial court's ruling permitting the admission of Garcia's out-of-court statements for an abuse of discretion. (*People v. Lawley* (2002) 27 Cal.4th 102, 153.) To avoid a violation of appellant's Sixth Amendment right to confrontation and cross-examination, the statements must be "nontestimonial." To be admissible, they must be trustworthy and against the declarant's penal interest. (*People v. Leach* (1975) 15 Cal.3d 419, 441-442.)

Appellant contends that Garcia's statements are testimonial hearsay because they were orchestrated by an undercover agent. We disagree.

In *Crawford,* the United States Supreme Court described testimonial hearsay as "'*ex parte* in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior "testimony" that the defendant was unable to cross-examine, or . . . 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (*Crawford v. Washington*, *supra*, 541 U.S. at pp. 51-52.) Pursuant to *Crawford*, out-of-court statements can be divided into police interrogations ("testimonial" hearsay) and statements in which no interrogation takes place ("nontestimonial" hearsay). (*Id*., at pp. 52-53.) Nontestimonial hearsay is subject only to "traditional limitations upon hearsay evidence" and does not implicate the Sixth Amendment right of confrontation. (*Davis v. Washington* (2006) 547 U.S. 813, 821; see *People v. Cooper* (2007) 148 Cal.App.4th 731, 740-741.)

Garcia's conversations with Velasquez were between a thief and a person he thought was a buyer of stolen property. They occurred under circumstances that Garcia could not reasonably have believed would be used later in trial. (See *U.S. v.*

7

*Summers* (10th Cir. 2005) 414 F.3d 1287, 1302 [proper focus is whether the declarant believes the statement will be used as evidence].)  A statement is not testimonial unless its primary purpose is "to establish or prove past events potentially relevant to a later criminal prosecution." (*Davis v. Washington*, *supra*, 547 U.S. at p. 822; *Michigan v. Briant* (2011) 562 U.S. 344 [131 S.Ct. 1143, 1154].)

Garcia could not have imagined that his conversation with Velasquez would later be repeated in court.  He thought he was talking to another conspirator and had no idea his remarks were being monitored and audiotaped and that they would be used in subsequent legal proceedings.  (See *U.S. v. Tolliver* (7th Cir. 2006) 454 F.3d 660, 665; *U.S. v. Underwood* (11th Cir. 2006) 446 F.3d 1340, 1347-1348; *U. S. v. Hendricks* (3rd Cir. 2005) 395 F.3d 175, 182-184; *U. S. v. Saget* (2d Cir. 2004) 377 F.3d 223, 229-230; *U.S. v. Smalls* (10th Cir. 2010) 605 F.3d 765, 778 [prisoner's recorded statement to a fellow prisoner who was actually a government informant is "unquestionably nontestimonial"].)  We agree with the rule and rationale of these cases.  We conclude Garcia's statements unwittingly made to Velasquez are not "testimonial" within the meaning of the confrontation clause.  (See also *People v. Arauz* (2012) 210 Cal.App.4th 1394 [statements made to an informant unwittingly are not testimonial].)

*The Charge of Attempting to Defraud an Insurer Is Not Time Barred.*

*Standard of Review*

The question of whether a prosecution is barred by the statute of limitations is reviewed as an issue of law concerning a jurisdictional defect.  When, as here, the facts are not in dispute, we exercise our independent judgment.  (*People v. Wetherell* (2014) 223 Cal.App.4th Supp. 12, 16-17; *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1448.)

*The Information*

Appellant contends the charge of attempting to defraud an insurer (count 2) is time barred because it was not filed within four years after May 7, 2009, when Garcia revealed to Velasquez that the truck was not insured against loss by theft.  Appellant claims the statute of limitations was not tolled by the initial filing on February 15, 2012,

8

because the offense of insurance fraud (§ 550, subd. (a)(1)) and the offense of attempting to defraud an insurer (§§ 664/548, subd. (a)) added on May 20, 2013, do "not involve the same conduct" but rather are "separate acts, divisible in time." We disagree.

Section 803, subdivision (b) provides, "No time during which prosecution of the same person for the same conduct is pending in a court of this state is a part of a limitation of time prescribed in this chapter." (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1439-1440; *People v. Whitfield* (1993) 19 Cal.App.4th 1652, 1659.) The Law Revision Commission comment to section 803 states that the term "same conduct" contemplates "some flexibility of definition" to "meet the reasonable needs of the prosecution, while affording the defendant fair protection against the enlargement of the charges after running of the statute." (*People v. Whitefield*, *supra*, at p. 1659.) Courts of Appeal have determined that the statute tolls the running of the statute of limitations for disparate charges that arise from a course of conduct. New counts are therefore deemed filed as of the date of the original complaint.

In *People v. Bell* (1996) 45 Cal.App.4th 1030, 1064 (disapproved on another point in *People v. Athar* (2003) 112 Cal.App.4th 73), charges of forgery and false filings of bankruptcy petitions or grant deeds were found to be based upon the "same conduct" as rent skimming "where the forgery and false filings were merely aspects of [the] rent skimming scheme." In *People v. Greenberger* (1997) 58 Cal.App.4th 298, 369, murder and aggravated kidnapping charges were based upon the "same conduct," permitting the jury to be instructed on the lesser offense of simple kidnapping without running afoul of the statute of limitations. *People v. Terry* (2005) 127 Cal.App.4th 750, 769, however cautions that section 803, subdivision (b) was not "intended to function as a categorical exception to the running of the applicable limitation period for the entire class of same or similar criminal acts allegedly committed by a defendant against the same victim during the same time frame as an offense charged in a pending prosecution."

Appellant's reliance on *Terry* is misplaced. He argues "the newly charged defrauding an insurer crime was a 'completely separate instance of criminal conduct' . . . because, as in *Terry*, those counts involved separate acts that were divisible

9

in time." Not so. Negotiating with Garcia and Velasquez, hiding the truck, turning it over to Velasquez for $1,000, falsely reporting the "theft" to the police and submitting a false and fraudulent insurance claim were all aspects of appellant's scheme to deceive and defraud his insurer. The scheme was proposed on April 26, executed on April 27, 2009, reported to the police on May 6, 2009 – all aspects of the same course of conduct for the singular purpose of committing insurance fraud or to defraud an insurer.

We carefully considered the other issues raised by appellant in his opening and reply briefs and reject them. No further comment is necessary.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BURKE, J.[*]


We concur:



YEGAN, Acting P. J.



PERREN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

10

Eugene L. Huseman, Judge

Superior Court County of Ventura
_____


David W. Scopp, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.